FIRST NATIONAL INSURANCE
COMPANY OF AMERICA,
Respondent,

v.

Charles E. CLARK, Appellant,

and

Christopher Scott Flick, Defendant.

No. 77598.

Supreme Court of Missouri,
En Banc.

May 30, 1995.

James B. Deutsch, Nelson L. Mitten, and R. Thomas Avery, Jefferson City, Organization of Defense Lawyers, amicus.

Thomas E. Deacy, Jr., Edward W. Mullen, and Patrick C. Cena, Kansas City, State Farm Ins., amicus.

Leo M. Newman and Mark S. Wallis, St. Louis, for appellant.

Gary E. Snodgrass, Evan D. Buxner, and Steven J. Hughes, St. Louis, for respondent.

ROBERTSON, Judge.

The issue in this case is whether the Missouri Vehicle Financial Responsibility Law, Section 303.010, RSMo 1994, *et seq.*, requires stacking of automobile liability coverage. The trial court held that the law did not require stacking liability policies. The Court of Appeals, Eastern District, reversed. We granted transfer and have jurisdiction. Mo.

Const. art. V, § 10. The judgment of the trial court is affirmed.

## I.

The parties stipulated to the underlying facts. At the time of the accident from which this case arises, Christopher Scott Flick owned a Ford Mustang and leased a Chevrolet Blazer. He purchased a separate policy for each automobile from respondent, First National Insurance Company. Each policy provided liability coverage of $100,000 per person and $300,000 per occurrence. On August 31, 1990, while driving the Blazer, Flick collided with Charles Clark ("appellant"), causing Clark grievous injury. Appellant sued Flick and obtained a $1,300,000 consent judgment. Respondent paid the limits of the Blazer's liability policy into the court and filed this declaratory judgment to determine whether it was liable for further damages under the Mustang's liability policy.

## II.

### A.

The Mustang insurance policy Flick purchased provided coverage for liability he incurred while driving "the owned automobile" and any "non-owned automobile." The parties stipulated that the leased Blazer was, as a factual matter, a "non-owned" vehicle; that does not relieve the Court of its responsibility to determine whether it fell within the meaning of that term in the insurance contract. The Mustang policy described the owned automobile as the one for which the insured paid the premium under the policy, and defined a "non-owned automobile" to include:

An automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile.

Appellant's first point claims that the Blazer fell outside the insurance contract's exclusion.

A trial court may make reasonable inferences from the facts it has, and such judgments deserve appellate court deference. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The parties' stipulation agreed

that Flick leased the Blazer from an acceptance company, and that Flick purchased insurance on the Blazer. The trial court could reasonably infer that the leased Blazer was "furnished for the regular use" of Flick from these facts. *See generally, Grinnell Mutual Reinsurance Co. v. Scott,* 628 S.W.2d 355 (Mo.App.1981). We hold that the trial court correctly interpreted the Mustang policy to exclude liability coverage for Flick when he drove the Blazer, and appellant's first point is denied.

### B.

That interpretation of the Mustang policy leads to consideration of appellant's contention that the public policy of Missouri requires the Court to ignore the "non-owned vehicle" provision of the contract between Flick and respondent. Appellant's ultimate point assigns error to the trial court's declaration against stacking the liability policies in this case and urges the Court to conclude that

no condition, exclusion, or definition can be used by plaintiff insurance company, in light of Sections 303.024, 303.025, and 303.026 RSMo [1994] to defeat coverage under a policy which contains the name of the tortfeasor because public policy dictates that financial responsibility is the goal to be achieved.

App. brief at 16.

This Court's cases recognize freedom of contract in liability insurance. *Halpin v. American Family Mutual Insurance Co.,* 823 S.W.2d 479, 483 (Mo. banc 1992). Nevertheless, the Court will not recognize contractual provisions that are contrary to the public policy of Missouri as expressed by the legislature.

In *Cameron Mutual Insurance Co. v. Madden,* 533 S.W.2d 538 (Mo. banc 1976), the Court held that Section 379.203, RSMo Supp. 1972, expressed a public policy of Missouri requiring abrogation of a contractual provision "limiting an insured to only one of the uninsured motorist coverages provided by a policy." *Id.* at 545. The Court permitted stacking of uninsured motorist coverage.

Appellant argues that Section 303.025, which requires all drivers to maintain financial responsibility, requires the Court to employ the reasoning in *Cameron* to hold that the non-owned vehicle provision of the policy *sub judice* violates public policy, and that the statute requires stacking of all of the insured's liability policies.

We disagree.

Section 379.203.1,[1] the statute at issue in *Cameron*, provides in pertinent part:

No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery ... unless coverage is provided therein or supplemental thereto ... in not less than the limits for bodily injury or death set forth in section 303.030[.5], RSMo [$25,-000], *for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles.*

[Emphasis added.] The Court found that the language of the statute unambiguously requires that a liability policy include at least $25,000 of coverage for all injuries to the persons insured, caused by an uninsured motorist. *Cameron* discovered nothing in the statute that permitted limiting the statutorily mandated coverage to injuries caused to the insured while in a particular covered vehicle. The Court reasoned that the insured had purchased coverage, paid the premiums required and was entitled to all of the coverage he had purchased to cover his injuries. To have held otherwise would have permitted the insurer to collect multiple premiums for the same level of risk.

By its clear language, Section 379.203 requires a minimum amount of coverage to persons, not particularly described vehicles. Thus, *Cameron* held that a contract term that purported to limit uninsured motorist coverage to injuries received in a particularly described vehicle violated the statutory mandate.

Unlike uninsured motorist coverage, the liability insurance described under the safety responsibility law relates to the use and operation of a particularly. described motor vehicle or class of motor vehicles. As the court said in *Tucker v. Government Employees Insurance Co.*, 288 So.2d 238, 242 (Fla.1973), a case that *Cameron* quoted at unusually great length to support its holding,

[w]e must not confuse uninsured motorist protection as inuring to a particular motor vehicle as in the case of automobile liability insurance. It [uninsured motorist coverage] is bodily injury insurance which protects against such injury inflicted by the negligence of any uninsured motorist.

It is such confusion upon which the appellant rests much of his argument.

Section 303.025 has a different focus than the uninsured motorist law and, for that reason, *Cameron* does not control this case. Section 303.025 states:

1. No owner of a motor vehicle registered in this state shall operate the vehicle ... unless the owner maintains the financial responsibility as required in this section. Furthermore, no person shall operate a motor vehicle owned by another with the knowledge that the owner has not maintained financial responsibility unless such person has financial responsibility which covers his operation of the other's vehicle.

2. A motor vehicle owner shall maintain his financial responsibility in a manner provided for in section 303.160, or with a motor vehicle liability policy which conforms to the requirements of the laws of this state.

Section 303.025 establishes a mandate for maintenance of financial responsibility by owners of motor vehicles and, absent owner's coverage, requires operators to maintain financial responsibility when operating a vehicle owned by another. However, Section 303.025 does not define the nature or extent of the financial responsibility required. To determine what will satisfy the mandate, one must look to Section 303.160, *et seq.*, RSMo 1994. Most owners and operators of vehicles undertake to satisfy the requirement by purchasing a motor vehicle liability policy.

---

1. Section 379.203 has been amended since *Cameron*, but not relevantly.

The term "motor vehicle liability policy" is described in Section 303.190 as an "owner's or operator's policy of liability insurance." § 303.190.1. These terms are further described as follows:

2. Such owner's policy of liability insurance:

(1) Shall designate by explicit description or appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and

(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle ... subject to limits, exclusive of interest and costs, with respect to each such motor vehicle, as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident.

3. Such operator's policy of liability insurance shall insure the person named as insured therein against loss from liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him ... subject to the same limits of liability as are set forth above with respect to any owner's policy of liability insurance.

Section 303.190.2–3. Many policies, such as the Mustang policy in this case, contain provisions making them both an owner's and an operator's policy.

 The public policy of this state is satisfied when there is an owners policy of liability insurance sufficient to meet the minimum requirements of Missouri's financial responsibility law. § 303.025. It is sufficient to say that because there was an owner's policy in effect, no operator's policy of liability insurance on the same vehicle is required by the Missouri financial responsibility law. Thus, the exclusion in the operator's provision of the Mustang policy will be enforced as written. We do not decide whether, in the absence of such owner's policy, the exclusion of coverage found to exist there in the operator's provisions of the Mustang policy would be valid.

## III.

The judgment of the trial court is affirmed.

All concur.