Donald and Sherrie **RADER**, Plaintiffs,

v.

Warren G. **JOHNSON**, Appellant,

and

**Universal Underwriters Insurance Co., Respondent.**

No. WD 50614.

Missouri Court of Appeals, Western District.

Sept. 12, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 31, 1995.

Application to Transfer Denied· Dec. 19, 1995.

Daniel Edward Hamann, Kansas City, for appellant.

William James Poland, Jr., Kansas City, for respondent.

David C. Blevins, Independence, for plaintiffs.

Before FENNER, C.J., P.J., and KENNEDY and LAURA DENVIR STITH, JJ.

FENNER, Chief Judge.

Warren G. Johnson appeals the trial court's grant of summary judgment to Universal Underwriters Insurance Company ("Universal") on Johnson's third-party petition against Universal seeking declaratory judgment that Universal's insurance policy issued to Metro Ford extended liability coverage for the plaintiff Raders' claims against Johnson.

The brief factual record reveals that Johnson went to the Metro Ford automobile dealership in Independence, Jackson County, Missouri, on May 12, 1993. He was test driving a 1988 Ford pickup when he struck the rear of a vehicle driven by plaintiff Donald E. Rader. Plaintiffs filed a petition alleging that Johnson was negligent, that his negligence caused personal injury to Donald Rader, and caused damages to plaintiffs, including loss of consortium. Thereafter, Johnson filed his third-party petition seeking a declaratory judgment of coverage under the Universal automobile liability insurance policy issued to Metro Ford, though he had two personal automobile liability policies with State Farm companies. Both Johnson and Universal filed motions for summary judgment on the issue of coverage, with the trial court ruling in favor of Universal on January 11, 1995. This appeal followed.

## I. STANDARD OF REVIEW

■ The Missouri Supreme Court provided an exhaustive analysis of summary judgment practice and review in its opinion in *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993). Appellate review of summary judgments is essentially *de novo*. *Id.* at 376. The criteria on appeal for testing the propriety of summary judgment are not different than those which the trial court should have employed initially. *Id.* As the trial court's initial judgment is founded on the record submitted and the law, there is no need for the appellate court to defer to the trial court's granting of the summary judgment motion. *Id.* This is especially true in cases such as the one at bar where there is no real dispute as to any material fact; rather, the dispute revolves around the interpretation of two insurance policies in light of the Missouri statutes governing automobile liability insurance.

## II. THE RELEVANT PROVISIONS OF EACH INSURANCE POLICY

At the time of the accident, there was a policy of garage insurance in force and effect issued by Universal to Metro Ford. Under the section entitled "Unicover Coverage Part 500–Garage," this policy contained the following agreement:

> INSURING AGREEMENT—WE will pay all sums the INSURED legally must pay as damages (including punitive damages where insurable by law) because of INJU-

RY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD.

The Universal policy also provides definitions for many of the terms in the insuring agreement:

AUTO HAZARD means the ownership, maintenance, or use of any AUTO YOU own or which is in YOUR care, custody or control and ... (3) furnished for the use of any person or organization.

INJURY means, with respect to:

Group 1—bodily injury, sickness, disease or disability (including death resulting from any of these) or damage to or loss of use of tangible property....

OCCURRENCE means an accident, including continuous or repeated exposure to conditions, which results in INJURY or POLLUTION DAMAGES during the Coverage Part period neither intended nor expected by the INSURED

....

The Universal policy also includes a definition of who is insured under the auto hazard section of the policy:

WHO IS AN INSURED—

With respect to the AUTO HAZARD:

... (3) Any other person or organization *required by law* to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission.

Finally, the limits of coverage for the Universal policy in the circumstances presented by this case are set out:

THE MOST WE WILL PAY—Regardless of the number of INSUREDS or AUTOS insured by this Coverage Part, persons or organizations who sustain INJURY, claims made or suits brought, the most WE will pay is:

1. With respect to GARAGE OPERATIONS and AUTO HAZARD, the limit

shown in the declarations for any one OCCURRENCE.

With respect to persons or organizations required by law to be an INSURED, the most WE will pay is that portion of such limit needed to comply with the minimum limits provision of such law in the jurisdiction where the OCCURRENCE took place. When there is other insurance applicable, WE will pay only the amount needed to comply with such minimum limits after such other insurance is exhausted.

The minimum limits in the State of Missouri, and therefore the limits of the Universal policy, are $25,000 per person, $50,000 per occurrence. Universal does not deny that the particular facts and claims of this case satisfy its policy definitions of "injury," "occurrence," and "auto hazard." Instead, Universal denied the coverage sought by Johnson based on the contention that he was not required by law to be an "insured" under the policy.

Universal points to two policies of insurance issued to Johnson for his personal vehicles by State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company (referred to collectively as the "State Farm" policies) in support of its position. These policies had coverage limits of $100,000 per person, up to $300,000 per occurrence; this coverage is well is excess of the minimum required by Missouri law.[1] The policies extended coverage to the use, by an insured, of a non-owned car. A non-owned car is defined identically in both State Farm policies as:

... a car not owned by or registered or leased in the name of:

1. you, your spouse;

2. any relative unless at the time of the accident or loss:

a. the car is or has been described on the declarations page of a liability policy within the preceding 30 days; and

**1.** The current minimum financial responsibility limit in the State of Missouri is $25,000 because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, $50,000 because of bodily injury to or death or two or more persons in any one accident, and $10,000 because of injury to or destruction of property of others in any one accident. § 303.190.2(2), RSMo 1994.

b. you, your spouse or a relative who does not own or lease such a car is the driver;

3. any other person residing in the same household as you, your spouse or any relative; or

4. an employer of you, your spouse or any relative.

Johnson does not contend that the Metro Ford pickup he was driving at the time of the accident does not fall within the definition of a "non-owned car" in the State Farm policies. Instead, Johnson contends that the coverage the State Farm policies provide excess coverage only, relying on the following provision:

If there is other liability coverage:

1. Policies Issued by Us to You.

If two or more vehicle liability policies issued by us to you apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

2. Other Liability Coverage Available From Other Sources.

Subject to item 1, if other vehicle liability coverage applies, we are liable only for our share of the damages. Our share is the percent that the limit of liability of this policy bears to the total of all vehicle liability coverage applicable to the accident.

3. Temporary Substitute Car, Non-Owned Car, Trailer.

If a temporary substitute car, a non-owned car or a trailer designed for use as a private passenger car or utility vehicle has other vehicle liability coverage on it, then this coverage is excess.

There are similar "excess only" clauses in the Universal policy. In the GENERAL PROVISIONS section of the Unicover policy, the following clause appears:

OTHER INSURANCE—Unless stated otherwise in a Coverage part, this insurance is excess over any other insurance, whether it is collectible or not.

Within the "Unicover Coverage Part 500—Garage" section there is an additional "other insurance" clause which states:

OTHER INSURANCE—The insurance afforded by this Coverage Part is primary, except it is excess:

(1) for pollution damages, product related damages and legal damages;

(2) for any person or organization who becomes an insured under this Coverage Part as required by law.

Section (2) of the latter clause would clearly apply to the situation presented by this case given Johnson's own argument that he was an insured "as required by law."

### III. *APPLICABLE MISSOURI STATUTES GOVERNING AUTOMOBILE LIABILITY INSURANCE*

◼ The Missouri Motor Vehicle Financial Responsibility Law ("MVFRL") provides, among other things, general guidelines for the contents of automobile liability insurance policies. The general purpose of the MVFRL is to make sure people who are injured on the highways may collect damage awards, within limits, against negligent motorists. *Halpin v. American Family Mut. Ins. Co.*, 823 S.W.2d 479, 482 (Mo. banc 1992). Section 303.190.2(2), RSMo 1994,[2] provides that a policy of liability insurance issued to an owner of an automobile:

Shall insure the person named therein *and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured,* against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle....

Pursuant to section 303.190.2(2), the Universal policy must provide coverage to Johnson while he was driving the Metro Ford vehicle. Subsection (3) of section 303.190.2 provides general guidelines for an operator's policy of insurance, stating that it:

[S]hall insure the person named as insured therein against loss from the liability imposed upon him by law for damages aris-

**2.** All statutory references are to the 1994 edition of the Missouri Revised Statutes unless otherwise indicated.

ing out of the use by him of any motor vehicle not owned by him. . . .

If these two statutes alone were implicated by the facts and circumstances of the case at bar, the decision of the Missouri Supreme Court in *First National Insurance Company of America v. Clark,* 899 S.W.2d 520 (Mo. banc 1995), may have required reversal of the trial court's entry of summary judgment in favor of Universal. In considering whether automobile liability coverage could be stacked in Missouri, the court discussed the relationship between an owner's liability policy and an operator's liability policy as described in sections 303.190.2 and 303.190.3. The *First National* court stated that "the public policy [of financial responsibility] is satisfied when there is an owner's policy of liability insurance sufficient to meet the minimum requirements of Missouri's financial responsibility law." 899 S.W.2d at 523. The court concluded that no operator's policy of liability insurance on the same vehicle is required as long as there was an owner's policy in effect. 899 S.W.2d at 523. Applying this reasoning to the case at bar, Johnson's coverage under his State Farm policies would not be required because of the valid Universal policy in effect at the time of the accident, therefore Universal would provide Johnson's primary liability coverage for the accident in question.

■ The Missouri Motor Vehicle Financial Responsibility Law, however, is not an exclusive statutory framework for determining all issues pertaining to automobile liability insurance coverage. Chapter 379 of the Missouri Revised Statutes also contains several provisions regarding automobile liability insurance coverage. Section 379.201 is of particular relevance to the case at bar, stating the following:

Every motor vehicle liability insurance policy insuring a motor vehicle licensed in this state *must* extend its liability coverage to include any other motor vehicle operated by the insured individual *if* the other motor vehicle is loaned, with or without consideration, to the insured individual for demonstration purposes . . . and if the other motor vehicle is loaned by a person, firm, or corporation engaged in the business of selling, repairing, or servicing motor vehicles. Such extension of liability coverage must include coverage for damage to the loaned vehicle.

This statute is specifically tailored to just the situation presented by the case at bar. Metro Ford provided one of its vehicles to Johnson for demonstration purposes and Metro Ford is in the business of selling such vehicles. Therefore, Johnson's automobile liability insurance policy *must* provide liability coverage for when he was demonstrating the Metro Ford vehicle.

## IV. COMPETING EXCESS "OTHER INSURANCE" CLAUSES

■ Johnson's State Farm policies purport to provide excess insurance coverage only for a non-owned car where the vehicle has other vehicle liability coverage on it. The Metro Ford vehicle is within the policy definition of a non-owned car and the vehicle does have other liability coverage on it through the statutorily required Universal garage policy.

The excess coverage provisions in the Universal policy are also implicated by the facts of this case. Johnson became an insured under the Universal policy only by operation of the law requiring Metro Ford to provide coverage for permissive users of their vehicles. The policy specifically states it provides excess coverage only for individuals who become insured by operation of the law, and only up to the statutory minimum. Additionally, the Universal policy states that it provides excess coverage only where there is other insurance, whether collectible or not. Missouri law requires the State Farm policies to provide coverage for Johnson when driving a demonstrator vehicle, therefore, there is other available insurance. Consequently, both the Universal and State Farm policies pledge to provide excess coverage only for the incident in the case at bar.

In analyzing the relationship between the competing excess clauses, it is important to note that we are not dealing with two personal automobile liability policies; instead, we are dealing with the conflicting clauses of State Farm's personal auto liability policies issued to Johnson and Universal's garage

liability policy issued to Metro Ford. The court in *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 594 S.W.2d 950 (Mo.App.1980), discussed the importance of this difference:

> These differences are relevant, because, arguably, one of the primary purposes of a private automobile liability policy is to insure the risks of a named individual with specific, identifiable driving habits, operating a named automobile, while the purpose of a garage liability policy is to insure the risk of operating a business—a garage— and only secondarily to insure the risks attributable to business employees or customers who may drive vehicles owned by the business.

*Id.* at 957. Despite these concerns, the court concluded that it was bound by the unambiguous language of each insurance contract providing excess coverage only. *Id.* at 958. The court found no compelling reason to deem one policy primary and to permit the other to provide excess coverage only; instead, the court determined that the provisions were mutually repugnant and concluded that the general coverage under the insurance agreement of *each* policy applied to cover the accident in question. *Id.* The coverage costs were apportioned based on a pro-rate clause in the State Farm policy. *Id.*

The most important difference between the case before us and the earlier *State Farm* case is the existence of section 379.201. Nonetheless, section 379.201, does not provide direction when insurance policies otherwise applicable contain conflicting excess clauses. Therefore, we hold that the excess clauses in the insurance policies in question are mutually repugnant, and will be disregarded.[3]

As in the earlier *State Farm* case, the insureds are not left without coverage against the loss. The general coverage under the policy applies, and each insurer must insure the costs of litigation and judgment. *See, e.g., Arditi v. Massachusetts Bonding & Ins. Co.*, 315 S.W.2d 736, 743 (Mo.1958);

*State Farm Mut. Automobile Insurance Co.*, 594 S.W.2d at 958. The case is treated as if none of the policies had other insurance clauses; instead, we hold the insurers liable to prorate in proportion to the amount of insurance provided by their respective policies. *Arditi*, 315 S.W.2d at 743.

Johnson's policies with State Farm each provide limits of $100,000 per person, up to $300,000 per occurrence. The Universal policy provides coverage for $25,000 per person, up to $50,000 per occurrence. Though Johnson's policies with State Farm appear to provide up to $600,000 coverage, a provision in each policy states that if more than one policy issued to Johnson by State Farm provides coverage for an accident, the total liability limits under the policies shall not exceed the greater of the limits of the individual policies. Applied to this situation, Johnson's State Farm policies provide up to $300,000 in liability coverage per occurrence.

Therefore, the combined total of available liability coverage from the State Farm and Universal policies is $350,000 for the accident in question. Of this total, the State Farm policies provide $300,000 of the potential coverage, or 85.7% of the available coverage. Based on the doctrine found in the *Arditi* and earlier *State Farm* case, State Farm is liable for 85.7% of any judgment against its insured, Johnson, in this matter, while Universal is liable for the remaining 14.3% of any judgment against Johnson up to the policy limits at which point its liability is exhausted.

The trial court erred in granting summary judgment in favor of Universal. Because Johnson's personal policies with State Farm and Metro Ford's garage policy with Universal contain mutually repugnant excess other insurance clauses, the clauses are disregarded and liability is prorated between the insurers based on the percentage of total liability coverage each provides Johnson under the circumstances herein. The judgment is

---

3. Because the parties in this case have limited their arguments to the issue of whether their policy is primary or excess in light of the MVFRL, we do not reach the issue of the applicability of "no liability" or "escape" clauses or their relationship with excess clauses in light of the MVFRL.

reversed and remanded for further proceedings consistent with this opinion.

All concur.