Mark KARSCIG, Appellant,

v.

Jennifer M. McCONVILLE, Appellant,

and

American Family Mutual Insurance Company, Respondent.

No. SC 90080.

Supreme Court of Missouri,
En Banc.

Jan. 12, 2010.

Rehearing Denied March 2, 2010.

**500**

William Dirk Vandever, The Popham Law Firm, Kansas City, Andrew J. Gelbach, Warrensburg, William Cownie, Lee's Summit, John E. Turner, Christopher P.

Sweeney, Turner & Sweeney, Kansas City, for appellant.

David R. Frye, Rebecca J. King, Lathrop & Gage L.C., Overland Park, Kansas City, for respondent.

Leland F. Dempsey, Ashley L. Baird, Dempsey & Kingsland, P.C., Kansas City, for amicus curiae Missouri Association of Trial Attorneys.

Michael A. Dallmeyer, Keith A. Wenzel, Hendren Andrae, LLC, Jefferson City, for amicus curiae Missouri Insurance Coalition.

WILLIAM RAY PRICE, JR., Chief Justice.

## I. Introduction

Mark Karscig appeals the trial court's entry of summary judgment in favor of American Family Mutual Insurance Company in his suit seeking $25,000 in liability coverage from an automobile policy issued to Jennifer McConville, the negligent motorist who injured him. Jennifer was driving a car owned by her parents and insured under a separate policy issued to them. No one contests that $25,000 of coverage existed under her parents' "owner's policy." This lawsuit seeks an additional $25,000 under the policy issued to Jennifer. The trial court found that Jennifer's policy did not provide her with coverage for Karscig's injury claims because the accident vehicle was excluded as a household vehicle under her policy and because all the policies precluded stacking.

■ This Court disagrees. American Family did not have a right to judgment as a matter of law because Jennifer's policy was an "operator's policy" and the Motor Vehicle Financial Responsibility Law (MVFRL) requires every owner's and operator's policy issued in Missouri to provide minimum liability coverage. Missouri law does not restrict coverage to a single

policy if a driver is insured under multiple policies. *See American Standard Insurance Company v. Hargrave,* 34 S.W.3d 88, 91–92 (Mo. banc 2001).

The judgment is reversed, and the case is remanded.

## II. Factual and Procedural Background

On October 12, 2005, Mark Karscig was seriously injured when his motorcycle was struck by a 1998 Pontiac Grand Am driven by Jennifer McConville. His medical bills exceeded $200,000. Jennifer admitted fault for running a stop sign and causing the wreck. Her parents owned the car she was driving, and it was being operated with their consent. The car was insured under an American Family Mutual Insurance Company policy that provided bodily injury liability coverage of $25,000 per person and $50,000 per accident ("parents' policy"). Coverage under the parents' policy is not challenged.[1]

Jennifer also was insured with American Family under a separate policy ("Jennifer's policy") on which she paid the premium and was designated the policyholder. That policy likewise provided liability coverage of $25,000 per person and $50,000 per accident. The vehicle listed on Jennifer's policy was a 1990 Pontiac Grand Am, which her parents also owned. The McConvilles did not maintain an "owner's policy" on this vehicle.[2] Coverage under Jennifer's policy is contested.

The liability coverage provision in Jennifer's policy states:

> You have this coverage if bodily injury and property damage liability coverage is shown in the declarations. We will pay compensatory damages an insured person is legally liable for because of bodily injury and property damage due to the use of a car or trailer.

The policy contains a provision excluding coverage for the use of family vehicles other than the one insured by the policy:

> This coverage does not apply to: ... 9. Bodily injury or property damage arising out of the use of any vehicle, other than your insured car, which is owned by or furnished or available for regular use by you or any resident of your household.

American Family denied coverage on the basis of this exclusion.

■ The policy also includes two "anti-stacking" provisions.[3] The first limits liability to the maximum allowed under a single policy regardless of the number of policies issued to the owner or insured: "The total limit of our liability under all policies issued to you by us shall not exceed the highest limit of liability under any one policy." The second limits liability to the maximum amount of coverage listed:

1. American Family paid the policy limit of $25,000 to Karscig on the parents' policy because Jennifer was a member of her parents' household and was permissively operating the accident vehicle, the 1998 Pontiac.

2. Jennifer's parents owned a 1998 Pontiac Grand Am, a 1998 Chevrolet C1500 pickup, the 1990 Pontiac Grand Am regularly driven by Jennifer, and a 1986 Chevrolet C10 pickup regularly driven by their son Andrew. The parents were policyholders only for the 1998 Pontiac and the 1998 pickup. Andrew was policyholder for the 1986 pickup. Jennifer was policyholder for the 1990 Pontiac.

3. " 'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Niswonger v. Farm Bureau Town & Country Ins. Co.,* 992 S.W.2d 308, 313 (Mo.App.1999). The two "anti-stacking" provisions in Jennifer's policy are intended to cover these two situations.

"We will pay no more than these maximums no matter how many vehicles are described in the declarations, or insured persons, claims, claimants, policies, or vehicles are involved."

Karscig filed suit against Jennifer for negligence and against American Family for a declaratory judgment that her policy provided coverage for his claims. The trial court severed the negligence action from the declaratory judgment action.[4] American Family then filed a counterclaim and cross-claim for declaratory judgment, asking the trial court to find that Jennifer's policy did not provide coverage for Karscig's claims because the accident vehicle was excluded under the policy and because the policies issued to the McConville family precluded stacking. The trial court granted summary judgment in favor of American Family. This Court has jurisdiction. Mo. Const. art. V, sec. 10.

### III. Analysis

Both issues in this case involve the interpretation of Jennifer's insurance policy relative to the MVFRL: 1) whether the exclusion in her policy applies, and 2) whether the anti-stacking provisions in her policy are enforceable.

### A. Standard of Review

■ Summary judgment is appropriate when there is no dispute as to the material facts and the movant has established a right to judgment as a matter of law. *ITT Commercial Finance v. Mid–America Marine*, 854 S.W.2d 371, 381–82 (Mo. banc 1993). In the present case, as the parties concede, there is no dispute as to the material facts. Both issues involve only the interpretation of an insurance policy, which is a question of law that this

Court reviews de *novo*. See *McCormack Baron Management Services, Inc. v. American Guarantee & Liability Ins. Co.*, 989 S.W.2d 168, 171 (Mo. banc 1999).

### B. The Exclusion Does Not Apply Because It Conflicts with the Motor Vehicle Financial Responsibility Law

■ Jennifer's policy **provides coverage** under the following clause: "We will pay compensatory damages an insured person is legally liable for because of bodily injury and property damage *due to use of a car* or trailer" (emphasis added). The term "insured person" is defined as "You or a relative." The pronoun "you" is defined as "the policyholder named in the declarations and spouse, if living in the same household." The term "car" is defined as "your insured car, a private passenger car, and a utility car." Here, coverage is provided because Jennifer, as the policyholder named in the declarations, is legally liable for Karscig's injuries due to her use of a private passenger car.

Her policy **excludes coverage**, however, under the following clause:

This coverage does not apply to: … 9. Bodily injury or property damage arising out of the use of any vehicle, *other than your insured car,* which is owned by or furnished or available for regular use by you or any resident of your household.

(Emphasis added). The term "your insured car" is defined, in relevant part, as "Any car described in the declarations." The declarations in Jennifer's policy describe only the 1990 Pontiac Grand Am. She was not driving this vehicle at the time of the accident; rather, she was driving her parents' 1998 Pontiac Grand Am.

---

4. In Karscig's negligence action against Jennifer, the jury awarded Karscig $656,000 plus statutory court costs, including all deposition costs. The trial court granted Jennifer a $25,000 credit for the payment made by American Family on her parents' policy. The net judgment against Jennifer is $631,000.

The accident vehicle thus falls within this exclusion category because 1) it was owned by Jennifer's parents, 2) it was available for Jennifer's regular use, and 3) it was not described in the declarations in Jennifer's policy.[5] Accordingly, the plain language of Jennifer's policy unambiguously excludes coverage for Karscig's injuries.

■ Nevertheless, the exclusion does not apply to exclude coverage for Karscig's injuries because it conflicts with the MVFRL's requirements for an "operator's policy." In this case, the applicability of the exclusion depends on whether Jennifer's policy is an "owner's policy" or an "operator's policy" under Missouri law. According to the MVFRL, a motor vehicle liability policy shall be either "an owner's or an operator's policy of liability insurance." § 303.190.1.[6] While the MVFRL does not define either "owner's policy" or "operator's policy," it does define "owner" and "operator." An owner is "a person who holds the legal title to a motor vehicle." § 303.020(9). An operator is "a person who is in actual physical control of a motor vehicle." § 303.020(8). These definitions are used throughout the MVFRL. § 303.020. Based on these definitions, a policy issued to an owner is an "owner's policy" and must comply with the statutory mandates of § 303.190.2, while a policy issued to a non-owner is an "operator's policy" and must comply with the statutory mandates of § 303.190.3.[7]

This is consistent with the general understanding of liability insurance law. An "owner's policy" insures a person who owns a vehicle, while an "operator's policy" insures a person who operates a vehicle owned by another. *See, e.g., 7A Couch on Insurance 3d* § 109:48 (West 2005) and 1 *Automobile Liability Insurance 4th* § 3:1 (West 2004). Ownership or non-ownership is the crux of the distinction.[8] This distinction is reinforced by the terminology used to describe the two types of policies:

> Most financial responsibility acts permit certification of a motor vehicle liability policy in either the form of an "owner's policy" or the form of an "operator's policy." These acts appear to have contemplated that *the distinction between the two should rest on the insured's ownership or lack of ownership of the vehicle involved in the accident.* This is evidenced by the nomenclature and dichotomy employed.

1 *Automobile Liability Insurance* 4th § 3:1 (emphasis added).

In this case, Jennifer's policy is silent as to whether it is an owner's or an operator's policy. The only vehicle described in the declarations—the 1990 Pontiac Grand Am—Jennifer did not own, nor did she own any of the other household cars insured by American Family. She was only an "operator" of these vehicles. Accordingly, the policy issued to her only could be an "operator's policy."

**5.** If at the time of the accident Jennifer had been driving the 1990 Pontiac declared in her policy, her policy would not have excluded coverage on its face. But in that case, her parents' policy would not have been required to provide coverage because it did not describe the 1990 Pontiac in its declarations.

**6.** All statutory references are to RSMo 2000.

**7.** This Court does not know of a situation in which a policy can be both an owner's and an

operator's policy. But where a person buys a policy for a vehicle she does not own, that policy is an operator's policy.

**8.** *See, e.g., State Farm Mut. Auto. Ins. Co. v. Ruuska,* 90 Mich.App. 767, 282 N.W.2d 472, 476 (1979), where the court, interpreting a financial responsibility law similar to Missouri's, held that "[w]hen one does not own a car, the liability policy issued is an 'operator's policy'; when one does own a car, an 'owner's policy' is issued."

Section 303.190.3 mandates the coverage to be provided by each operator's policy:

3. Such **operator's policy** of liability insurance shall insure the person named therein against loss from the liability imposed upon him or her by law for damages arising out of the use by him or her of *any motor vehicle not owned by him or her*, . . . subject to the same limits of liability as are set forth above with respect to any owner's policy of liability insurance.

§ 303.190.3 (emphasis added).[9] As an "operator's policy," therefore, Jennifer's policy must insure her against liability arising out of her use of any motor vehicle *not owned by her.* Although the exclusion at issue attempts to exclude coverage for injury "arising out of the use of any vehicle, other than your insured car," it conflicts with the MVFRL's requirements for an "operator's policy." The MVFRL controls and mandates that Jennifer's policy "shall insure" her against liability "arising out of the use" of the non-owned accident vehicle, the 1998 Pontiac.

### C. The First Anti–Stacking Provision Does Not Apply and the Second Provision Is Invalid under the MVFRL

Jennifer's policy contains two "anti-stacking" provisions. The first does not apply in this case, and the second is invalid under the MVFRL.

■ The first provision limits liability on multiple policies issued to one policyholder: "The total limit of our liability under all policies issued to you by us shall not exceed the highest limit of liability under any one policy." The pronoun "you" is defined as "the policyholder named in the declarations and spouse, if living in the

same household." Jennifer is the policyholder named in the declarations and is unmarried. Because she was issued only a single policy by American Family, the first anti-stacking provision simply does not apply here.

■ The second provision limits liability to the maximum amount of damages shown in the declarations:

We will pay no more than these maximums *no matter how many* vehicles are described in the declarations, or insured persons, claims, claimants, *policies*, or vehicles *are involved.*

(Emphasis added). Here, two policies are "involved": Jennifer's policy and her parents' policy. The maximum liability for bodily injury under each policy is $25,000 per person. Her parents' policy already had provided maximum coverage of $25,000 to Karscig (because Jennifer was a member of her parents' household and was permissively operating the accident vehicle). This "anti-stacking" provision attempts to restrict the total compensation to $25,000 even though the two policies issued by American Family *each* provide $25,000 in coverage.

The MVFRL requires each owner's and operator's policy issued in Missouri to provide minimum liability coverage of $25,000. *See Hargrave*, 34 S.W.3d at 92. It also does not restrict the minimum liability payments to a single insurance policy if coverage is provided under multiple policies. *Id.* at 91.

In *Hargrave*, a woman driving a non-owned car had liability coverage under two owner's policies, her father's—the car's owner—and her own. The issue was

---

9. American Family argues that Jennifer purchased an owner's policy because her policy meets the definition of an owner's policy under section 303.190.2. That section, however, does not define an owner's policy, just as section 303.190.3 does not define an operator's policy; as stated above, it merely mandates the coverage to be provided by the policy.

whether multiple policies must provide coverage when those policies each contain a clause denying coverage for injured family members ("household exclusion" clause) and one insurer already had paid the statutory minimum. The Court held, in part, that both insurers must provide the minimum statutory liability coverage, noting that the partial invalidity of household exclusion clauses created under the statutory scheme of the MVFRL applies to both owners' policies. *Id.* at 92. *Hargrave* clearly stated:

> What the MVFRL requires is that each valid owner's or operator's policy provide the minimum liability limits specified, $25,000 for bodily injury to or death of one person in any one accident and $50,000 for bodily injury to or death of two or more persons in any one accident.

*Id.*

American Family claims that an "anti-stacking" provision similar to the one in Jennifer's policy was found enforceable in *First National Ins. Co. v. Clark*, 899 S.W.2d 520 (Mo. banc 1995). In *Clark*, a negligent driver had purchased two policies, one on a vehicle he owned and one on a vehicle he leased. The insurance company paid the limits of the policy on the leased vehicle involved in the accident, but denied payment on the other policy because of a non-owned vehicle provision. The Court held that the non-owned vehicle provision was enforceable because it did not violate the public policy expressed in the MVFRL. *Id.* at 523.

It is unclear what viability remains in *Clark* after *Hargrave*. *Hargrave* neither distinguished nor mentioned *Clark* in any way. Nonetheless, *Clark* does not control this case. The driver in *Clark* was the sole policyholder for both vehicles. In the present case, Jennifer did not own any vehicle, and the accident vehicle was cov-

ered by two distinct policies purchased by two separate parties.

Here, two policies provided coverage: Jennifer's operator's policy and her parents' owner's policy. The MVFRL requires that each provide minimum liability coverage of $25,000 for bodily injury. Accordingly, Jennifer's operator's policy also must provide the statutory minimum of $25,000 in liability coverage for Karscig's injuries.

### IV. Conclusion

The judgment is reversed, and the case is remanded.

All concur.