Shelly RUTLEDGE and Carl Cox, as Heirs for the Deceased Sarah Irene Harrison, Plaintiffs–Appellants,

v.

Charles BOUGH and National Casualty Company, Defendants–Respondents.

No. SD 31979.

Missouri Court of Appeals, Southern District, Division Two.

May 28, 2013.

Eric M. Belk, Springfield, MO, for Appellants.

Thomas W. Collins, III, and Shaun D. Hanschen, Sikeston, MO, for Respondents.

JEFFREY W. BATES, J.

Shelly Rutledge and Carl Cox (hereinafter referred to collectively as Appellants and individually as Rutledge or Cox) filed an equitable garnishment action against National Casualty Company (NCC) pursu-

ant to § 379.200.[1] As judgment creditors of Charles Bough (Bough), Appellants sought to collect insurance money from an NCC insurance policy to apply toward satisfaction of their judgments. NCC insured a 1991 Mercury Cougar (the Cougar) owned by Bough's employer, Thompson Capital, Inc. (Thompson Capital). NCC denied that its policy provided any coverage, and the parties filed cross-motions for summary judgment. The trial court granted NCC's motion and denied Appellants' motion. The court decided that: (1) Bough's personal automobile liability policy provided non-owned automobile liability coverage up to the amount required by the Motor Vehicle Financial Responsibility Law (MVFRL) found in Chapter 303; and (2) for that reason, Bough did not qualify as an "insured" under the NCC policy. Because § 303.190 required the owner's policy issued by NCC to provide liability coverage up to the minimum MVFRL limits for Bough's permissive use of the Cougar, the trial court erred in granting NCC's motion for summary judgment. Accordingly, we reverse the judgment and remand the cause for further proceedings consistent with this opinion.

## I. Factual and Procedural Background

The material facts are undisputed. Bough was interested in purchasing the Cougar. On June 4, 2008, Bough obtained permission from Thompson Capital to drive the Cougar home to show his wife and 16–year–old daughter. Bough intended to purchase the Cougar if his daughter liked it. At approximately 11:24 p.m., Bough was involved in an automobile acci-

dent that caused the death of Sarah Harrison (Sarah). Rutledge and Cox are the surviving parents of Sarah. Jason Harrison (Jason) is the surviving spouse of Sarah. Appellants brought a wrongful death action against Bough and obtained a judgment against him in the amount of $750,000. The judgment was apportioned in the following manner: (1) $250,000 to Rutledge; (2) $250,000 to Cox; and (3) $250,000 to Jason.

Bough was the named insured on a personal automobile policy issued by Safeco Insurance Company (Safeco). That policy provided liability coverage for Bough's use of non-owned autos like the Cougar. Safeco paid $50,000 in partial satisfaction of the judgment against Bough.[2] Thereafter, Appellants brought this equitable garnishment action against NCC.[3] The petition alleged that the NCC policy also provided liability coverage to Bough.

A copy of the NCC policy in effect from May 2008 through May 2009 was attached to the petition. Thompson Capital was one of the named insureds. The NCC policy contained a Commercial Garage Coverage Part. Section II of that coverage form provided liability insurance. Section II.A.2 stated:

> "Garage Operations"—Covered "Autos"
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos".…

---

1. All references to statutes are to RSMo (2000) unless otherwise specified. All references to rules are to Missouri Court Rules (2013).

2. Bough's Safeco policy had liability insurance limits of $50,000 per person and $100,000 per accident.

3. Jason was not named as one of the party-plaintiffs in this equitable garnishment action.

Section II.A.3, which defined who was an insured, stated in pertinent part:

**Who Is An Insured**

a.   The following are "insureds" for covered "autos";

. . .

(2) Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

. . .

(**d**) Your customers.   However, if a customer of yours:

. . .

(ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered "auto" is principally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance.

Section VI.H contained the following definition:

"Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations.   "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in Section I of this Coverage Form as covered "autos".  "Garage operations" also include all operations necessary or incidental to a garage business.

The parties agree that the Cougar, which was owned by Thompson Capital, was a covered automobile.   Relying upon the Section II.A.3 definition of insured, NCC denied coverage.   NCC claimed that Bough was not an insured under the NCC policy because Bough's Safeco policy met the MVFRL minimum limits for Missouri.

Both parties filed motions for summary judgment.

The trial court granted NCC's motion and denied Appellants' motion.   After reviewing the undisputed facts, the court decided that, under the terms of the NCC policy, Bough was a "customer" because he was test-driving the Cougar with permission when the accident occurred.   Nevertheless, the court also decided that Bough was not an insured because: (1) the definition of "insured" in the NCC policy excluded a customer who had liability coverage equal to the minimum limits required by the MVFRL; and (2) this exclusion of Bough from the definition of "insured" did not violate the MVFRL.   The court also determined that the "other insurance" clauses in the NCC and Safeco policies were not mutually repugnant.   This appeal followed.

## II.   Applicable Principles of Review

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.   Rule 74.04(c); *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 381–82 (Mo. banc 1993).   "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *ITT*, 854 S.W.2d at 376.   There is no dispute as to the material facts in this case.   We review *de novo* the interpretation of the NCC and Safeco insurance policies and the application of the MVFRL to those policies. *Karscig v. McConville*, 303 S.W.3d 499, 502 (Mo. banc 2010); *Am. Standard Ins. Co. v. Hargrave*, 34 S.W.3d 88, 89–90 (Mo. banc 2000).

## III.   Analysis

Appellants challenge the trial court's grant of summary judgment in favor of

NCC and present three points for decision. For ease of analysis, we will address the points out of order.

## Point I

■ In Point I, Appellants argue that the MVFRL requires NCC's policy to provide the coverage up to the minimum limits, despite any contrary provisions in NCC's policy. We agree.

Both owners and operators of vehicles registered in this state, or required to be registered in this state, must comply with the requirements of the MVFRL. *See* § 303.025 RSMo Cum.Supp. (2007); § 303.190; *Bryan v. Peppers*, 175 S.W.3d 714, 721 (Mo.App.2005). The MVFRL distinguishes between an owner's and an operator's policy of liability insurance. §§ 303.190.2 and .3. An owner is defined as "a person who holds legal title to a motor vehicle[.]" § 303.020(9). Section 303.190.2(2) provides that an owner's policy of liability insurance:

> [s]hall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits, exclusive of interest and costs, with respect to each such motor vehicle, as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident[.]

*Id.* It is undisputed that: (1) Thompson Capital owned the Cougar; (2) at the time of the collision, Bough was using the Cougar with the express permission of Thompson Capital; and (3) the collision occurred in Missouri. Pursuant to the plain language of § 303.190.2(2), the owner's policy issued by NCC to Thompson Capital was required to provide coverage, up to the $25,000 per person MVFRL limit, for Bough's permissive use of the Cougar. *See Karscig*, 303 S.W.3d at 503 (holding that an owner's policy must comply with the statutory mandates in § 303.190.2).

NCC argues, however, that the exclusion in Section II.A.3 of its policy should be enforced because Bough's own policy provided at least the minimum coverage required by the MVFRL. Because that provision excluding Bough as an insured conflicts with the MVFRL's requirements for an owner's policy, NCC's argument fails. As our Supreme Court explained in *Karscig*, § 303.190 contains different requirements for an owner's policy and an operator's policy. *Karscig*, 303 S.W.3d at 503. Because the Cougar was owned by Thompson Capital, the NCC policy must provide at least the $25,000 per person liability coverage mandated by § 303.190.2. *See Karscig*, 303 S.W.3d at 503.

There is a similar provision in § 303.190 which mandates that an operator's policy provide coverage up to the MVFRL limits "against loss from the liability imposed upon him or her by law for damages arising out of the use by him or her of any motor vehicle not owned by him or her...." § 303.190.3. Bough's Safeco policy was an operator's policy because it covered his use of a non-owned auto. *See* § 303.190.3; *Karscig*, 303 S.W.3d at 503. Therefore, Bough's policy also had to provide at least the minimum coverage mandated by § 303.190.3. *Karscig*, 303 S.W.3d at 503.

As our Supreme Court explained in *Am. Standard Ins. Co. v. Hargrave*, 34 S.W.3d 88 (Mo. banc 2000), nothing in the plain language of the MVFRL restricts its mandatory coverage to a single insurance policy:

> There is no language in section 303.190 that would restrict the minimum liability payments to a single insurance policy. There are no words anywhere in the scheme of the MVFRL that provide an insured party is to receive only one statutory limit of $25,000 in compensation if they are insured under multiple policies.

*Hargrave*, 34 S.W.3d at 91. That principle applies here because the MVFRL required that Bough be provided with liability coverage, up to the MVFRL limits, under the owner's policy issued by NCC and the operator's policy issued by Safeco.

*Rader v. Johnson*, 910 S.W.2d 280 (Mo. App.1995), presented a factual scenario nearly identical to the case at bar. During a test drive, the driver was involved in an accident, causing personal injury to a third party. *Rader*, 910 S.W.2d at 281. The vehicle was owned by Metro Ford and insured through a garage liability policy issued by Universal Underwriters Insurance Company (Universal). *Id.* The driver was insured under two personal automobile liability policies through State Farm and had coverage in excess of the MVFRL minimum requirements. *Id.* at 281–82. The trial court granted summary judgment in favor of Universal on the driver's declaratory judgment action seeking coverage under Universal's garage policy. *Id.* at 281. In reversing the trial court, the western district of this Court held that the MVFRL mandated that the driver be covered, up to the MVFRL limits, by the owner's policy issued to Metro Ford from Universal. *Id.* at 283.

*Hargrave* and *Rader* teach that the insured exclusion in NCC's owner's policy is invalid to the extent it would deny coverage, up to the MVFRL limits, for Bough's permissive use of the Cougar. *See* § 303.190.7; *Halpin v. Am. Family Mut. Ins. Co.*, 823 S.W.2d 479, 483 (Mo. banc 1992). Therefore, the NCC policy provides Bough with the mandatory MVFRL liability insurance coverage of $25,000 per person. The insured exclusion in the NCC policy, however, is enforceable to bar any additional liability insurance coverage for Bough beyond that mandated by the MVFRL. *See State Farm Mut. Auto. Ins. Co. v. Zumwalt*, 825 S.W.2d 906, 909 (Mo. App.1992) (holding that a household exclusion in the policy was void, insofar as it denied coverage in the amount required by § 303.190.2, but it was valid as to any coverage exceeding that amount). Appellant's first point is granted.

### Point III

In Point III, Appellants contend the NCC policy provides contractual liability coverage in the amount of $1,000,000 because the policy is ambiguous. We disagree.

An ambiguity exists in an insurance policy when a word or phrase is reasonably open to different constructions. *See Mendenhall v. Prop. and Cas. Ins. Co. of Hartford*, 375 S.W.3d 90, 92 (Mo. banc 2012); *Grissom v. First Nat'l Ins. Agency*, 371 S.W.3d 869, 874 (Mo.App.2012). The trial court determined that Bough was a "customer" because he was test-driving the Cougar with permission when the accident occurred. As noted above, Section II.A.3 defines an insured, for liability insurance purposes, to exclude a customer who possesses his or her own liability insurance coverage that meets or exceeds the requirements of the MVFRL.

The NCC policy does not contain a definition for "customer." It does, however,

contain a definition for "customer's auto," in Section VI.E of the policy. It states:

> "Customer's auto" means a customer's land motor vehicle, "trailer" or semitrailer. It also includes any "customer's auto" while left with you for service, repair, storage or safekeeping. Customers include your "employees", and members of their households who pay for services provided.

Appellants argue that this definition renders the word "customer" in Section II.A.3 ambiguous. We find no merit in that argument.

In addition to providing liability coverage for damages resulting from an accident involving the use of a covered auto in Section II, the NCC policy also provided the following garagekeeper's coverage in Section III:

### A. Coverage

1. We will pay all sums the "insured" legally must pay as damages for "loss" to a "customer's auto" or "customer's auto" equipment left in the insured's care while the "insured" is attending, servicing, repairing, parking or storing it in your "garage operations" under [comprehensive coverage, specified causes of loss coverage or collision coverage.]

It is this coverage to which the definition in Section VI.E applies. Under this coverage, an employee who paid for services provided by Thompson Capital would be covered as a "customer" for damage to the employee's car. The definition in Section VI.E, which does not apply to the Section II liability coverage, creates no ambiguity in the word "customer" as used in Section II.A.3. Therefore, the NCC policy does not provide any contractual liability coverage in excess of that required by the MVFRL. Point III is denied.

## Point II

In Point II, Appellants contend that the "other insurance" clauses in the NCC and Safeco policies are mutually repugnant, and each must pay its *pro rata* share of the judgment. In light of our disposition of Points I and III, the merits of Point II need not be addressed. The $50,000 payment by Safeco reduced the unsatisfied portion of the judgment to $700,000. The NCC policy only provides an additional $25,000 of liability coverage to Bough that is mandated by the requirements of the MVFRL. Payment of that sum will exhaust the applicable limits of each policy and leave $675,000 of the judgment unsatisfied. Point II is denied as moot.

The trial court's judgment in favor of NCC is reversed. The cause is remanded for further proceedings consistent with this opinion.

DANIEL E. SCOTT, P.J., and DON E. BURRELL, C.J., concur.