

*In the*

*Missouri Court of Appeals*

*Western District*

| | | |
|---|---|---|
| **ADAM DUTTON,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD74940** |
| | ) | |
| **v.** | ) | **OPINION FILED: January 21, 2014** |
| | ) | |
| **AMERICAN FAMILY MUTUAL** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Marco A. Roldan, Judge

**Before:** James E. Welsh, Chief Judge, Presiding, and Joseph M. Ellis, Victor C. Howard, Thomas H. Newton, Lisa White Hardwick, Alok Ahuja, Mark D. Pfeiffer, Karen King Mitchell, Cynthia L. Martin, Gary D. Witt and Anthony Rex Gabbert, Judges

Adam Dutton ("Dutton") appeals the trial court's ruling in this declaratory judgment action that American Family Mutual Insurance Company ("American Family") is not liable under the terms of its policy for the damages Dutton suffered in an automobile accident caused by American Family's insured, Barbara Hiles ("Hiles"). Because the language of this policy provides for coverage and because both the Missouri Motor Vehicle Financial Responsibility Law ("MVFRL") and Missouri Supreme Court jurisprudence require "stacking" of liability insurance policies up to the state minimum

requirement of coverage of $25,000 per policy on owner's policies where multiple policies apply to a covered incident, the judgment is reversed.

## FACTUAL AND PROCEDURAL HISTORY[1]

On May 25, 2009, Dutton was injured in a motor vehicle accident with an automobile operated by Hiles. Hiles, in attempting to make a left turn, crossed a lane of traffic and turned into Dutton's lane of traffic causing an accident. As a result of the accident, Dutton suffered serious, permanent injuries as well as significant medical expenses. It is undisputed that Hiles was at fault in the collision.

Dutton filed a personal injury claim against Hiles based on this collision. Hiles was insured by American Family with multiple policies. A dispute arose as to the amount of liability coverage which applied to the damages. Dutton, Hiles, and American Family entered into a settlement agreement as to the issues in the underlying accident. The settlement agreement acknowledged that Hiles was at fault and liable for the collision and that Dutton's damages were equal to or exceeded the amount of liability coverage under the combined American Family policies at issue.

The settlement agreement further acknowledged that at the time of the accident, Hiles was driving a 2007 Nissan Maxima ("Nissan") that she owned and that was insured under a policy with American Family, which provided liability coverage. In addition to the Nissan, Hiles owned a 2003 Ford F-250 pickup truck ("Ford"), which was insured under a separate policy with American Family. The Ford vehicle was not involved in the

---

[1] "When reviewing a trial court's grant of summary judgment, this court views the record in the light most favorable to the party against whom judgment was entered." *O'Rourke v. Esurance Ins. Co*., 325 S.W.3d 395, 397 (Mo. App. E.D. 2010) (citation omitted).

2

accident. The Nissan and Ford policies are identical, and Hiles was the named insured on both policies. Each policy has limits of $25,000 per person/$50,000 per accident.

Pursuant to the settlement agreement, Hiles, through American Family, agreed to pay the $25,000 limits pursuant to the Nissan policy. The parties agreed that there remained a dispute as to the applicable coverage under the Ford policy. The parties further agreed that a declaratory judgment action would be the appropriate method to determine the applicable limits of liability coverage, if any, under the Ford policy for Dutton's injuries. The parties agreed that any further recovery by Dutton would be limited to the limits of liability coverage under the Ford policy as determined in the declaratory judgment action.

Dutton filed his petition against American Family in April 2011, seeking, *inter alia*, a declaration as to whether the Ford policy provided minimal liability coverage under the MVFRL for the May 25, 2009 accident. Dutton moved for summary judgment. In February 2012, the trial court issued a judgment in favor of American Family, as follows:

> (1) while every owner's liability policy issued in Missouri must meet the minimum requirements of the . . . MVFRL, §303.190.2, RSMo, there is no requirement in the MVFRL that each owner's liability policy must provide the minimum limits under the MVRFL when the motor vehicle covered by such owner's policy is not involved in an accident; and (2) the anti-stacking language in the "other insurance" clause in the American Family policy is not ambiguous, is valid, and effectively limits the recovery of Mr. Dutton to the amount paid by American Family on behalf of its insured from the coverage limits of the owner's policy of the vehicle involved in the accident.

Dutton appeals.

3

**Pertinent Policy Language**

Both the Nissan and Ford policies contain the following relevant language:[2]

DEFINITIONS USED THROUGHOUT THIS POLICY
* * * *

3. **Car** means **your insured car**, a **private passenger car**, and a **utility car**.
* * * *

5. **Private passenger car** means a four-wheel car of the private passenger type.
* * * *

9.  **Use** means ownership, maintenance, or use.
* * * *

12.  **We, us** and **our** mean the company providing this insurance [i.e. American Family].
* * * *

13.  **You** and **your** mean the policyholder named in the declarations and spouse, if living in the same household [i.e. Barbara Hiles].
* * * *

14. Your **insured car** means:
a. Any **car** described in the declarations and any **private passenger car** or utility trailer you replace it with. You must tell us within 30 days of its acquisition.
* * * *

PART I – LIABILITY COVERAGE
* * * *

**We** will pay compensatory damages an **insured person** is legally liable for because of **bodily injury** and **property damage** due to the **use** of a **car** or **utility trailer**.
* * * *

EXCLUSIONS
This coverage does not apply to:
* * * *

9. **Bodily injury** or **property damage** arising out of the **use** of any vehicle, other than **your insured car**, which is owned by or furnished or available for regular **use** by **you** or any resident of **your** household.

---

[2] Bolded terms appear in bold in the policy and denote terms that are specially defined within the policy.

* * * *

LIMITS OF LIABILITY
The limits of liability shown in the declaration apply, subject to the following:

1. The **bodily injury** liability limit for "each person" is the maximum for all damages sustained by all persons as the result of **bodily injury** to one person in any one occurrence.
* * * *

**We** will pay no more than these maximums no matter how many vehicles are described in the declarations, or insured persons, claims, claimants, policies or vehicles are involved.
* * * *

OTHER INSURANCE
If there is other auto liability insurance for a loss covered by this part, **we** will pay **our** share according to this policy's proportion of the total of all liability limits. But, any insurance provided under this Part for a vehicle **you** do not own is excess over any other collectible auto liability insurance.
* * * *

PART VI:  GENERAL PROVISIONS
3.  **Two or More Cars Insured**.  The total limit of our liability under all policies issued to you by us shall not exceed the highest limit of liability under any one policy.
* * * *
11.     Terms of Policy Conformed to Statute.  Terms of this policy which are in conflict with the statutes of the state in which this policy is issued are changed to conform to those statutes.

## ANALYSIS

Dutton asserts two points on appeal.  He first argues that the trial court erred in entering judgment in favor of American Family because every owner's motor vehicle insurance policy must provide minimum limits of liability coverage pursuant to the MVFRL, specifically section 303.190, as well as interpretative case law from the

5

Missouri Supreme Court. Dutton argues in his second point that the trial court erred in entering judgment in favor of American Family because the "other" insurance clause in the Ford policy is ambiguous in that it conflicts with other anti-stacking language in the policy and contains a broad grant of coverage with no limitations or qualifying language and that this ambiguity should be decided in favor of coverage. We agree with Dutton's first point and reverse.

In our analysis, we determine (1) that the insurance policy affords liability coverage in this case, (2) that the MVFRL applies, and (3) that the MVFRL defeats the proffered exclusion and anti-stacking language.

## Standard of Review

Our Supreme Court has set forth our standard of review:

> Summary judgment is appropriate only when the moving party demonstrates that "there is no genuine dispute as to the facts" and that "the facts as admitted show a legal right to judgment for the movant." The movant bears the burden of establishing both a legal right to judgment and the absence of any genuine issue of material fact required to support the claimed right to judgment. The propriety of summary judgment is purely an issue of law, and this Court's review is essentially *de novo*. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*Bob DeGeorge Assocs., Inc. v. Hawthorn Bank,* 377 S.W.3d 592, 596 (Mo. banc 2012) (quoting *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 380 (Mo. banc 1993)). When reviewing a trial court's grant of summary judgment, this court views the record in the light most favorable to the party against whom judgment was entered. *O'Rourke*, 325 S.W.3d at 397.

6

The interpretation of an insurance policy is a question of law that we also determine *de novo*. *Seeck v. Geico Gen. Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007) (citation omitted).

## Coverage

"[T]he insured bears the burden of proving coverage under an insurance policy." *Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181, 187 (Mo. App. W.D. 2012) (citation omitted). However, "[i]n general, an insurance policy is a contract to afford protection to an insured and will be interpreted, if reasonably possible, to provide coverage." *Shiddell v. Bar Plan Mut.*, 385 S.W.3d 478, 483 (Mo. App. W.D. 2012) (citation omitted). Here, the Ford owner's policy explicitly provides liability coverage. As noted above, the relevant portion of the Ford policy states:

> **We** will pay compensatory damages an **insured person** is legally liable for because of **bodily injury** and **property damage** due to the **use** of a **car** or **utility trailer**.

Later, in the definitions part of the policy, "car" is defined as "**your insured car**, a **private passenger car**, and a **utility car**." As noted above, a "private passenger car" is defined as "a four-wheel car of the private passenger type." Although the Ford was not involved in the accident, it is not disputed by American Family that the Ford policy provides coverage for the policyholder's "use of a car" and that the use of the car contemplates a "private passenger car," which, in this case, is the Nissan.[3] As American Family's arguments center on the applicability of the MVFRL, policy exclusions, and anti-stacking language, American Family does not advance a scrutable argument

---

[3] It would likewise cover a rental car or borrowed car.

7

contesting that the Ford policy is triggered under the liability coverage portion of the Ford policy, and we find none.[4] In short, given that an insurance policy is interpreted, if reasonably possible, to provide coverage, and given that American Family does not contest coverage under these facts, it is plain that coverage of the Nissan was within the purview of the Ford policy. *See Durbin v. Deitrick*, 323 S.W.3d 122, 124 (Mo. App. W.D. 2010) (determining that the *same* policy language as at bar contained in four different personal liability policies on four different vehicles owned by the driver provided stackable liability coverage regarding a fifth vehicle that was operated by the driver but owned by the driver's employer and finding ambiguity as to "other" insurance clauses); *Karscig v. McConville*, 303 S.W.3d 499, 502 (Mo. banc 2010) (interpreting the *same* policy language as at bar contained in operator's policy as providing liability coverage for a car not involved in an accident).

We are in agreement with the trial court on this matter. The trial court did not determine that the Ford policy was not triggered under the liability coverage portion of the policy so as not to provide coverage. The trial court determined instead that, as an issue of first impression, the MVFRL does not require that each owner's liability policy

---

[4] In fact, on this topic during oral argument, American Family stated that "but for the existence of Exclusion Number 9, or even the anti-stacking language of this policy, I wouldn't be here arguing." That said, Judge Martin's dissenting opinion ignores American Family's concession on this topic and doggedly attempts to make the argument on American Family's behalf, even going so far as to retrieve the now fourteen-year-old case files from *American Standard Insurance Co. v. Hargrave*, 34 S.W.3d 88 (Mo. banc 2000) for the purpose of extrapolating definitional language from the *Hargrave* insurance policy. *Judge Martin's Dissenting Opinion*, note 1. Judge Martin's dissenting opinion takes this definitional language out of context and outside of the parameters of the holding in *Hargrave*, and, more importantly, is in direct contradiction to Judge Martin's dissenting opinion's own admission that, "*Hargrave* did not need to address whether husband's vehicle's owner policy designated the Ford Escort Mrs. Hargrave was driving *because the issue was not in dispute*." *Judge Martin's Dissenting Opinion* at 3-4 (emphasis added). Like *Hargrave*, this same issue *is not in dispute* between the parties in this case, so it is odd that Judge Martin's dissenting opinion does not feel constrained in the same fashion as our Supreme Court apparently was in *Hargrave*.

8

provide the minimum limits under the MVRFL when the motor vehicle covered by such owner's policy is not involved in an accident, indicating that it, too, determined this action to be within the insuring agreement portion of the policy. As is clear from the judgment, the trial court's ruling in favor of American Family is based on a determination that the MVFRL does not require minimum limits and that anti-stacking language is valid. Given our concurrence with the trial court in its determination of coverage under the insuring agreement, we address the remainder of the trial court's determinations and American Family's related arguments *infra*.

### MVFRL

As coverage under the liability portion of the policy is clear, we are left to address whether the MVFRL applies to the Ford policy, and if so, whether it overrides any relevant policy exclusion. By way of background, section 303.025.1 of the MVFRL requires "financial responsibility" of motor vehicle owners. Specifically, it states that "[n]o owner of a motor vehicle in this state . . . shall operate, register or maintain registration of a motor vehicle . . . unless the owner maintains the financial responsibility which conforms to the requirements of the laws of this state." In this case, Hiles complied with section 303.025.1 by maintaining an owner's policy on each of her two vehicles.

Where section 303.025 requires "financial responsibility," section 303.190.2 mandates the minimum limit of liability coverage (here, $25,000) that an owner's policy of liability insurance must provide. Following is the relevant portion of section 303.190.2.

9

Such owner's policy of liability insurance:

(1) ***Shall designate by explicit description <u>or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted</u>***;

(2) ***Shall insure the person named therein*** and any other person, as insured, ***<u>using any such motor vehicle or motor vehicles</u>***[5] with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits, exclusive of interest and costs, with respect to each such motor vehicle, as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident; and

(3) May exclude coverage against loss from liability imposed by law for damages arising out of the use of such motor vehicles by a member of the named insured's household who is a specifically excluded driver in the policy.

(Emphasis added.)

---

[5] Judge Martin's dissenting opinion ignores the plain meaning of these words as well as rules of statutory construction. "The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *S. Metro. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. banc 2009) (citation omitted). "In determining the intent and meaning of statutory language, the words must be considered in context and sections of the statutes in *pari materia*, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words." *Id.* "[N]o portion of the statute is read in isolation, but rather the portions are read in context to harmonize all of the statute's provisions." *BASF Corp. v. Dir.*, 392 S.W.3d 438, 444 (Mo. banc 2012). When the rules of statutory construction are followed, one can readily ascertain that the context of *both* subsections (1) and (2) of section 303.190.2 revolve around the concept of not just describing vehicles on a declarations page, but instead, identifying those "motor vehicle or motor vehicles" to which *coverage* is to be provided to *persons* insured therein. Here, American Family's insuring agreement provides coverage to persons insured in the Ford policy who are legally liable for bodily injuries and property damages due to the use of a "car." And, "car" is plainly and simply defined in the Ford policy to include the Nissan private passenger car that Ms. Hiles was using at the time of the wreck she negligently caused. Though Judge Martin's dissenting opinion would re-write subsections (1) and (2) to expressly limit the MVFRL to only those motor vehicles that are listed in the declarations page of a policy, that is simply *not* what subsections (1) and (2) plainly state. It is, thus, no coincidence that American Family has not made the argument propounded for the first time by Judge Martin's dissenting opinion.

10

That there are two owner's policies does not obviate application of the MVFRL to the Ford policy. To the contrary, our Supreme Court has held that where there are two applicable owner's policies, they both provide some coverage because the MVFRL requires minimum coverage in *every* applicable *policy*. Specifically, in *American Standard Insurance Co. v. Hargrave*, our Supreme Court, in its examination of two owner's policies, held that:

> There is no language in section 303.190 that would restrict the minimum liability payments to a **single** insurance policy. There are no words anywhere in the statutory scheme of the MVFRL that provide that an insured party is to receive only one statutory limit of $25,000 in compensation if they are insured under multiple policies. **The plain language of section 303.190.2 indicates that every owner's policy issued in this state must provide the minimum liability coverage to comply with Missouri law**, and this Court's decision in *Halpin* holds *all* household exclusion clauses invalid up to those minimum limits of coverage.

34 S.W.3d 88, 91 (Mo. banc 2000) (quoting *Halpin v. Am. Family Mutual Ins. Co.*, 823 S.W.2d 479 (Mo. banc 1992)) (emphasis added). The *Hargrave* court determined that each of the insurance policies in question was an owner's policy, as is true under our facts, and that each qualifying owner's policy must pay the minimum required liability coverage amount, as we find here. *Id.* at 92. The court stated:

> While it is correct that excess insurance coverage is not subject to the minimum financial requirements of section 303.190, each owner's policy must still provide the minimum requirements outlined in section 303.190.2. It is only any additional coverage contained *in each individual policy* that is not subject to section 303.190.2's requirements. Neither the MVFRL, nor the *Halpin* decision, require liability coverage exceeding the amounts specified in section 303.190. What the MVFRL requires is that *each valid* owner's or operator's policy provide the minimum liability limits specified, $25,000 for bodily injury to or death of two or more persons in any one accident. As argued by American Standard, the excess insurance issue is irrelevant to the *core issue of this case; the application of section 303.190.2*

11

*when multiple liability policies are in place* and each contains a household exclusion clause.

*Id.* (emphasis added). Put another way, the *Hargrave* court concluded that because there were two valid owner's policies at the time of the accident, both policies would be required to pay the minimum $25,000 as required by the MVFRL. *Id.* The MVFRL minimum requirement per policy was not satisfied by the payment of one policy when there were other policies that also provided coverage. *See id.* at 91-92. This was true despite American Standard's argument that its owner's policy was excess over the policy on the vehicle involved in the collision.

Now, the facts of our case and the language of the insurance contract at bar must be applied to the mandate of the MVFRL. Section 303.190.2(1) requires that the owner's policy of liability insurance "shall designate by explicit description or by appropriate reference *all motor vehicles* with respect to which coverage is thereby to be granted." (emphasis added to denote plurality of term). As noted above, in this case, the insurance contract explicitly describes the covered vehicles, *inter alia*: (1) the car named in the declarations (i.e. Ford truck); and, (2) the private passenger car (i.e. Nissan sedan) that Hiles was "in use of" at the time of the accident. Thus, the policy falls squarely within the purview of section 303.190.2(1) of the MVFRL. Minimum liability coverage of $25,000 is thus mandatory under 303.190.2(2).[6]

---

[6] Judge Ahuja's dissenting opinion posits that the majority opinion is decided on a ground that Dutton did not raise. In support, Judge Ahuja's dissenting opinion cites an excerpt from our *en banc* oral arguments during which Dutton's counsel was distinguishing the two policies at hand, the Ford and the Nissan. From that portion of oral arguments and from references in the record indicating that Dutton did not argue the policy was a multi-vehicle policy, Judge Ahuja's dissenting opinion supposes that Dutton has "explicitly repudiated" any contention that the Nissan could be designated a vehicle under the Ford policy pursuant to section 303.190.

12

We do not agree with the contention that any coverage under the Ford policy for the Nissan is excess to the base level of coverage demanded by section 303.190.2. *See, e.g., State Farm Mut. Auto Ins. Co. v. Scheel*, 973 S.W.2d 560, 567 (Mo. App. W.D. 1998) (holding that an owner's policy may provide additional coverage that is more limited than what an operator's policy must provide to comply with section 303.190.3); § 303.190.7 (stating "[a]ny policy which grants the coverage required for a motor vehicle liability policy may also grant lawful coverage in excess of or in addition to the coverage specified . . . and such excess coverage . . . shall not be subject to the provisions of this chapter"). In the case at bar, as noted above, the plain language of the liability coverage portion of the policy made clear that liability coverage under the owner's policy spanned to more than the Ford listed on the declarations page. "Where an insurance policy promises the insured something at one point but then takes it away at another, there is an ambiguity." *Durbin*, 323 S.W.3d at 125 (citation omitted). Nowhere is coverage for use of "a passenger car" unambiguously denominated or explained as excess coverage. "To test whether the language used in the policy is ambiguous, the language is considered in

To the contrary, Dutton's first Point Relied On asserts trial court error because "Missouri statutes and case law mandate that every owner's motor vehicle insurance policy issued in the state of Missouri must provide the minimum limits of liability coverage required by RSMo § 303.190, in that the [Ford] policy . . . provides liability coverage in the amount of $25,000 to cover the damages sustained by Appellant . . . as Ms. Hiles is the named insured and she is legally liable for Appellant's damages due to her use of a private passenger car and any exclusions or limitations on minimum coverage are invalid." The argument portion of Point One is twenty-five pages long. It includes the entire text of section 303.190, which necessarily includes the legislature's requirement that a policy "[s]hall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted." Dutton also argues, consistent with our holding here, that the Ford policy's definition of "car" includes "private passenger car" and that the Nissan meets the definition of that term. Dutton also argues, consistent with our holding here, that one of the policy exclusions conflicts with the MVFRL. That Dutton cites the entirety of section 303.190 in arguing that the Nissan is covered and that we highlight a portion of that section to explain our holding indicate that we are deciding this opinion consistent with the arguments Dutton provides in his brief. We emphasize certain language from section 303.190 in hopes of guiding the reader through the analysis of the thorny requirements of the MVFRL.

13

the light in which it would normally be understood by the lay person who bought and paid for the policy." *Blumer v. Auto. Club Inter–Ins. Exch.,* 340 S.W.3d 214, 218 (Mo. App. W.D. 2011) (citation omitted). In other words, we apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance" and we resolve "ambiguities in favor of the insured." *Seeck*, 212 S.W.3d at 132 (citations omitted). "In Missouri, this rule is more rigorously applied in insurance contracts than in other contracts." *Long v. Shelter Ins. Co.,* 351 S.W.3d 692, 696 (Mo. App. W.D. 2011) (citation omitted). Viewing the language as would be normally understood by a lay person of average understanding, even if we were to find that the policy language on this matter to be ambiguous, we would construe the language of the policy against the insurer. *Blumer,* 340 S.W.3d at 218; *Durbin*, 323 S.W.3d at 125.[7]

We further note that our opinion is in alignment with the legislative intent behind the MVFRL. The purpose behind the MVFRL is to "ensure that persons injured on Missouri's highways, whether they be owners, operators, occupants of the insured's vehicle, occupants of other vehicles, or pedestrians, may collect at least minimal damage awards against negligent motor vehicle operators." *Hargrave*, 34 S.W.3d at 90. "This protection extends to occupants of the insured vehicle as well as to operators and occupants of other vehicles and pedestrians." *Halpin*, 823 S.W.2d at 482. "We believe that the legislature had a purpose of requiring motor vehicle liability policies to provide

---

[7] Judge Ahuja's dissenting opinion characterizes our holding as determining that Exclusion 9 is ambiguous. To be clear, we find here that the insuring agreement encompasses coverage of the Nissan, a determination in accord with the trial court's judgment and conceded by Judge Ahuja's dissenting opinion as an undisputed fact. Finding that the insuring agreement covers the Nissan, we next considered the proffered exclusions. Looking to Supreme Court precedent, because we determine that Exclusion 9 is in conflict with the MVFRL's minimum requirements, we need not reach a determination as to whether Exclusion 9 is ambiguous.

14

coverage coextensive with liability, subject to the statutory limits. We should give effect to the pervasive purpose even though the method of expression may be inartistic." *Id.* In short, our determination that minimal coverage exists under the Ford policy is consistent both with Supreme Court precedent and with the legislature's pervasive purpose of providing coverage.

## Exclusions

Finding that the Ford owner's policy includes coverage of Hiles' operation of the private passenger car involved in the accident, the Nissan, and that the MVFRL applies to the Ford policy, we next turn to the policy's exclusions. Dutton argues that under the MVFRL, any exclusions or limitations are inapplicable or invalid. We agree.

Missouri strictly construes exclusionary clauses against the drafter. *Manner v. Schiermeier*, 393 S.W.3d 58, 62 (Mo. banc 2013) (citation omitted). "The burden of showing that an exclusion to coverage applies is on the insurer." *Id.*[8] As noted above, American Family argues that "Exclusion 9" is applicable. Deemed a "non-owner" exclusion, it states that coverage does not apply to:

> **Bodily injury** or **property damage** arising out of the **use** of any vehicle, other than **your insured car**, which is owned by or furnished or available for regular **use** by **you** or any resident of **your** household.

---

[8] Judge Ahuja's dissenting opinion posits that the majority "offers no rationale for looking at the policy's insuring clause to expand the universe of 'designated' vehicles, while not also looking to the policy's exclusions, which specify that coverage does not extend to other owned vehicles." Our opinion is not a "pick and choose" approach; rather, it is based on settled law that "an insurance policy is a contract to afford protection to an insured and will be interpreted, if reasonably possible, to provide coverage," *Shiddell*, 385 S.W.3d at 483, and that "Missouri strictly construes exclusionary clauses against the drafter." *Manner*, 393 S.W.3d at 62. Regardless of this established doctrine, our holding here follows settled law that the MFVRL requires minimum coverage in this case despite an otherwise valid exclusion. And our holding here is, as noted above and conceded in Judge Ahuja's dissenting opinion as an undisputed fact, in alignment with the trial court's determination that the Nissan is a contemplated, covered vehicle under the insuring agreement of the Ford policy.

15

The Ford policy also includes an additional limitation, commonly known as an anti-stacking provision. "'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, *as where the insured has **two or more** separate vehicles under separate policies*, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Karscig*, 303 S.W.3d at 501 n.3 (citation omitted) (emphasis added).

At issue here is the following anti-stacking provision:

> **Two or More Cars Insured**. The total limit of our liability under all policies issued to you by us shall not exceed the highest limit of liability under any one policy.

*Karscig* is dispositive of both the effect of Exclusion 9 and of the anti-stacking limitation. 303 S.W.3d 499. In *Karscig*, the plaintiff was injured when a tortfeasor struck his motorcycle. *Id.* at 501. The tortfeasor's vehicle was a 1998 Pontiac owned and insured by her parents with American Family. *Id.* The tortfeasor had a separate policy with American Family applicable to another car owned by her parents, a 1990 Pontiac, but for which the tortfeasor paid the premium and was considered the insured. *Id.* The policy issued on the 1990 Pontiac was thus an operator's policy (not an owner's policy). *Id.* The Supreme Court emphasized that the declarations in the operator's policy described only the 1990 Pontiac, which the tortfeasor was not driving, though coverage

applied also to the 1998 Pontiac involved in the wreck. *Id.* The content of the declarations page was thus not an obstacle to coverage.[9]

Despite language in the tortfeasor's policy -- which is exactly the same as Exclusion 9 in the case at bar -- that excluded coverage "arising out of the **use** of any vehicle, other than **your insured car**, which is owned by . . . **you**," the *Karscig* court determined that American Family was liable under the policy. In so holding, the *Karscig* court reasoned that the MVFRL's provision relating to the requirements of an operator's policy mandated minimal coverage of $25,000 on every policy, despite the exclusions. Minimal coverage thus was stacked on the owner's policy limit maintained by the tortfeasor's parents, despite not only this exclusion but also anti-stacking limitations.

Where a part of an insurance policy runs contrary to the public policy of the MVFRL, the clause in question constitutes a "partial invalidity." *Halpin*, 823 S.W.2d at

---

[9] Though, were we to accept the logic of Judge Martin's dissenting opinion, this would be an MVFRL obstacle to coverage because Judge Martin's dissenting opinion would argue—even though the parties do not—that the only designated vehicle from the declarations page was a vehicle not involved in the wreck. This, of course, we cannot do: the intermediate courts of appeals are constitutionally "bound to follow the last controlling decision of the Missouri Supreme Court." *Dilley v. Valentine*, 401 S.W.3d 544, 549 (Mo. App. W.D. 2013) (citing Mo. Const. art. V, sec. 2; additional citations omitted). Further, we note that the cases cited in footnote 3 of Judge Martin's dissenting opinion are inapposite to the procedural facts and legal precedent of *Hargrave* and are, likewise, inapposite to the present case. Further, though this same footnote suggests that there is some requirement that the Supreme Court explicitly reverse these numerous cases that pre-date *Hargrave* to the extent that any portion of these pre-*Hargrave* cases conflict with *Hargrave*, we note that (1) the cases are simply inapposite to the issues addressed in *Hargrave* (and here) and (2) there is no constitutional requirement that our Supreme Court must scour the universe of precedent to expressly reverse any precedent contrary to its most current pronouncement of the law; instead, it is the requirement of *this court* to follow the most recent pronouncement of the law from our Supreme Court.

It is further beyond the province of this court to review the record presented to the Supreme Court in a prior case and rewrite its opinion to reflect what we believe the Court should have written. We do not allow a party to attach documents to a brief that are not part of the record, even to supplement the proceedings in an unrelated case that might bear on a case at bar. *Meyers v. S. Builders, Inc.,* 7 S.W.3d 507, 512 n.6 (Mo. App. S.D. 1999). Were a party to do so, we would not consider those documents on appeal. As such, Judge Martin's dissenting opinion's admittedly "highly unusual exercise" in doing so is simply inappropriate and unfair to the parties. To interpret the opinion in *Hargrave* based on a review of the briefs and records before the Supreme Court would give the opinion a precedential effect for those familiar with its record different from its precedential effect on everyone else. *Meyers,* 7 S.W.3d at 512 n.6.

480 (holding that an insurance clause that excluded coverage for household members was in dereliction of the MVFRL's public policy). And where multiple policies must be "stacked" in order to comply with the MVFRL, a trial court's failure to do so constitutes reversible error. *Karscig*, 303 S.W.3d at 505. In this case, because Exclusion 9 and the anti-stacking language negate mandatory minimal coverage required under the MVFRL, the trial court erred in ruling against Dutton.

In so holding, we note that the fact that *Karscig* involved an operator's policy and an owner's policy is of no consequence. To the contrary, the court held that the "MVFRL requires each *owner's* and *operator's* policy issued in Missouri to provide minimum liability coverage of $25,000." *Id.* at 505 (citing *Hargrave*, 34 S.W.3d at 91-92) (emphasis added). Missouri law "also does not restrict minimum liability payments to a single policy if coverage is provided under multiple policies." *Id.* And key to this case, "whether the Policy is viewed as an *owner's* policy or an *operator's* policy, it is only one insurance policy, subject to one statutorily required minimum liability coverage of $25,000 under the MVFRL." *Allstate Prop. & Cas. Ins. Co. v. Davis*, 403 S.W.3d 714, 718 n.4 (Mo. App. W.D. 2013) (emphasis added).

American Family relies on *First National Insurance Co. of America v. Clark* for the proposition that a policy does not provide coverage for an owned vehicle that the policy did not describe as a covered vehicle. 899 S.W.2d 520 (Mo. banc 1995). That case involved two separate insurance policies with the same person named as the owner of each of policy, as in the case at bar. *Id.* at 521. The two policies insured a Ford Mustang and a Chevy Blazer; both policies provided $100,000/$300,000 liability limits;

18

the insured (under both policies) negligently caused a wreck while operating the Blazer that resulted in more than $200,000 in damages to Clark. Although the policy limits of $100,000 were paid to Clark under the Blazer policy, the insurer refused to "stack" the liability coverage with the Mustang policy to pay a total of $200,000 to Clark. *Id.* The *Clark* court agreed with the insurer. *Id.* at 522.

As noted above, however, pursuant to *Karscig*, which our Supreme Court decided five years after *Clark*, the fact that a vehicle is not specifically identified in the declarations page is not an obstacle to coverage. More importantly, however, in *Clark*, no argument was raised that the insurer owed the *minimum* MVFRL coverage of $25,000 under the Mustang policy. Further, our Supreme Court subsequently stated: "It is unclear what viability remains in *Clark* after *Hargrave*." *Karscig*, 303 S.W.3d at 505. We are bound by the more recent holdings of our Supreme Court in *Hargrave* and *Karscig*.

There is, nonetheless, limited viability remaining in *Clark* after *Hargrave*: anti-stacking clauses or other applicable exclusionary clauses are, in fact, valid *for any excess amounts of coverage over and above the mandatory minimum coverage required by the MVFRL*. In applying *Hargrave* and *Karscig* to the facts of *Clark*, it is plain that, faced with the same facts today, our Supreme Court would not only determine that Clark would require $100,000 of liability coverage under the Blazer policy because the insured was operating the Blazer at the time of the collision but also that the insured would be entitled to $25,000 of coverage under the *separate* Mustang policy. In short, although the Mustang policy provided $100,000 of liability coverage, the MVFRL required minimum

19

coverage of $25,000 from the otherwise valid exclusionary or anti-stacking provisions of the Mustang policy.

As noted above, our holding today is consistent with our recent decision in *Allstate Property*, wherein we noted that the *Hargrave* decision addressed the application of the MVFRL to a situation with multiple applicable policies, similar to the case at bar, as opposed to a single policy covering multiple vehicles. 403 S.W.3d at 718 n.4. If both vehicles in the case at bar had been insured under a single policy containing the exclusions in the Ford policy, the outcome would be different.[10]

---

[10] We note too that in its fourth remark, Judge Ahuja's dissenting opinion seems to assert that the public policy behind exclusions deemed "drive other cars" or "non-owned vehicles" will be affected drastically by our holding that minimal coverage is required here under the MVFRL. To that end, Judge Ahuja's dissenting opinion relies heavily on *State Farm Mutual Automobile Insurance Co. v. Western Casualty and Surety Co.* to illustrate its argument that a policy is intended "basically to provide coverage on one designated vehicle" with "limited additional coverage." 477 S.W.2d 421, 424 (Mo. banc 1972). In this 1972 case, the Supreme Court, in ruling against State Farm, recognized the amorphous nature of the exclusion in general and the fact that due regard should be given to the "pertinent facts" surrounding "each case":

> Without detailing and discussing all [bases to determine the applicability of such an exclusion], we conclude that we should not limit ourselves either to a test of merely determining motive or purpose or one of simply measuring length and extent of availability of use. Rather, *each case should be decided on its own facts*, and the court should take into consideration the type and length of use, the purpose for which the non-owned automobile was furnished, and any other pertinent facts, including a determination of whether the use and purpose was in harmony with or violative of the objective of the 'non-owned automobile' clause.

*Id.* (emphasis added). But what is relevant is that since that 1972 case, as noted above, our Supreme Court has held that MVFRL coverage requires each owner's and operator's policy issued in Missouri to provide minimum liability coverage of $25,000. *Karscig*, 303 S.W.3d at 505; *Hargrave*, 34 S.W.3d at 91-92. Given that the Supreme Court has considered the very language present in American Family's "non-owned vehicles" exclusion and determined that it is void to the extent it conflicts with the MVFRL, we see no merit in Judge Ahuja's dissenting opinion's supposition. And again, we do not hold these exclusions to be void as a class of exclusions but rather hold that here the exclusion is void up to the $25,000 statutory dictate of the MVFRL.

Additionally, we note an internal inconsistency in Judge Ahuja's dissenting opinion's fourth and fifth comments. In its fourth comment, Judge Ahuja's dissenting opinion seems to recognize that a policy can encompass permissive use of other cars (e.g. rental vehicles, friends' vehicles, and other loaner vehicles). At the same time, in its fifth comment, Judge Ahuja's dissenting opinion posits that our interpretation here is in conflict with section 303.024.5 of the MVFRL, which specifies that an insurance identification card must contain a description of every insured motor vehicle. Judge Ahuja's dissenting opinion would extend that statute to mean that every designated vehicle would be identified by make and model and identification number on the insurance identification card. Under Judge Ahuja's dissenting opinion's reading of the MVFRL, however, no policy could include permissive use of other vehicles *that Judge Ahuja's dissenting opinion recognizes as normal coverage* because of conflict with section 303.024.5.

20

Because the anti-stacking language and the non-owner exclusion cannot be enforced under this policy due to the mandates of the MVFRL, the trial court erred in ruling against Dutton. Pursuant to Rule 84.14, we can issue such judgment as the court ought to give. We hold that Dutton should have been granted summary judgment declaring that the Ford policy provided coverage for this accident up to and including the limits of the MVFRL of $25,000.

## CONCLUSION

The judgment of the trial court is reversed and judgment is granted to the Appellant consistent with this opinion.

_____
Gary D. Witt, Judge

Joseph M. Ellis, Victor C. Howard, Thomas H. Newton, Mark D. Pfeiffer, Anthony Rex Gabbert, Judges, Concur in the Majority Opinion
Judge Alok Ahuja dissents in separate opinion, joined by Chief Judge James E. Welsh, Judge Lisa White Hardwick and Judge Karen King Mitchell
Judge Cynthia L. Martin dissents in separate opinion, joined by Chief Judge James E. Welsh, Judge Lisa White Hardwick, Judge Alok Ahuja and Judge Karen King Mitchell

---

We cannot adopt Judge Ahuja's dissenting opinion's interpretation of the MVFRL.

21


ADAM DUTTON,                          )
      **Appellant,**          )
                                )
v.                          )  **WD74940**
                                )
AMERICAN FAMILY MUTUAL          )  **FILED:  January 21, 2014**
INSURANCE COMPANY,          )
      **Respondent.**          )

## DISSENTING OPINION

Adam Dutton was injured in an automobile accident caused by Barbara Hiles.  The accident occurred while Hiles was driving a Nissan Maxima sedan which she owned, and which was insured by American Family.  American Family has paid Dutton the full limits of liability under the policy insuring the Maxima.

Dutton now seeks to recover additional money under a *second* American Family policy, which insured a Ford F-250 pickup truck Hiles also owned.  The F-250 was *not* involved in the accident in which Dutton was injured.  And the F-250 policy provides, in clear and unambiguous language, that

> [t]his coverage does not apply to . . . [¶] [b]odily injury or property damage arising out of the use of any vehicle, other than your insured car, which is owned . . . by you . . . .

This exclusion plainly precludes coverage for Dutton's injuries, since Hiles was operating a vehicle she owned, but which was *not* insured under the F-250 policy, at the time of the accident. Because the majority finds coverage despite the unambiguous language of the other owned vehicle exclusion, I respectfully dissent.

I.

Missouri's Motor Vehicle Financial Responsibility Law (the "MVFRL"), specifies that an owner's policy of automobile liability insurance "[s]hall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted." § 303.190.2(1).[1] The MVFRL requires that an owner's policy insure the named insured, and any permissive user of the designated vehicle(s), "against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles . . ." § 303.190.2(2).

The majority opinion concludes that, because the F-250 policy's insuring clause extends coverage to an insured's use of any private passenger car, any vehicle Hiles happened to be driving was a "designated" vehicle under the F-250 policy. The majority then holds that the other owned vehicle exclusion violates § 303.190.2(2), because it denies coverage for Hiles' use of what the majority deems to be a "designated" vehicle. The majority's conclusion that the Maxima was "designated" under the F-250 policy is a linchpin of its analysis: the majority only finds the other owned vehicle exclusion invalid because it purportedly conflicts with the coverage required by § 303.190.2 for "designated" vehicles.

---

[1] Statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated through the 2008 cumulative supplement.

2

There are at least two fundamental problems with the majority's conclusion that Hiles' Nissan Maxima – which was insured under a separate American Family policy – is a "designated" vehicle under the F-250 policy. First, Dutton has never made this argument; to the contrary, Dutton has explicitly acknowledged that the F-250 policy only "designates" a single vehicle: the F-250 itself. Second, even if it had been presented, the majority's "designation" argument is simply incorrect, and will have absurd and unintended consequences.

A.

Dutton has not argued that Hiles' Nissan Maxima was a "designated" vehicle under the F-250 policy; to the contrary, Dutton has explicitly rejected the majority's conclusion that the F-250 policy "designated" any vehicle beyond the F-250 itself. During oral argument, the following exchange occurred during Dutton's counsel's introductory remarks:

> [Counsel:] There's no dispute as to the facts. It was a car accident. The tortfeasor, Barbara Hiles, turned in front of Adam Dutton, causing a car accident, and he was injured. Barbara Hiles at the time was driving a 2007 Nissan; she owned that vehicle. She also owned a Ford F-250. She had an owner's policy on each of those vehicles; separate policies. A policy that named the 2007 Nissan, and *a separate policy that designated the Ford F-250*.
>
> [Judge:] Mr. Brown, I apologize for interrupting, but given your comment . . . . For owner's policies, the Financial Responsibility Law says that the policy "[s]hall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted." I believe I heard your comment that *the vehicle or vehicles designated under what we refer to as the F-250 policy is the F-250.*
>
> [Counsel:] *Yes, that's right, it's the single vehicle on that policy.*
>
> [Judge:] *And that's the single designated vehicle under that policy.*

3

> [Counsel:] ***That's right***, the other policy designated the vehicle she was driving at the time. American Family paid the limits for the policy that designated the Nissan. We're concerned with the owner's policy on the F-250.

(Emphasis added.)

Dutton's statements at oral argument were not inadvertent, or an aberration. In his petition, discovery responses, and motion papers in the trial court, and in his appellate briefing, Dutton has repeatedly and expressly acknowledged: that the F-250 policy "does not identify any other vehicle as the insured vehicle"; that the F-250 is the only vehicle "listed" or "named" in the F-250 policy; that the F-250 policy is not a "multi-vehicle policy"; and that the F-250 policy was issued "on" the F-250 alone. Indeed, although it concludes that the Maxima was "designated" in the F-250 policy, the majority opinion itself recognizes that Hiles' two owner's policies insured different vehicles: according to the majority, "Hiles complied with section 303.025.1 by maintaining an owner's policy on each of her two vehicles." Maj. Op. at 9.

Given Dutton's multiple, explicit acknowledgments that the F-250 truck is the _only_ vehicle "designate[d]" under the policy at issue, we cannot reverse the trial court's grant of summary judgment based on a conclusion, first suggested in the majority opinion, that the Maxima was "designated" in the F-250 policy. It is black-letter law that we will not consider arguments not raised in the trial court to support reversal of a summary judgment.[2] It is also black-letter law that we will not construct arguments for

---

[2] *See*, *e.g.*, *Est. of Downs v. Bugg*, 242 S.W.3d 729, 733 (Mo. App. W.D. 2007); *Citibrook II, LLC v. Morgan's Foods of Mo., Inc.*, 239 S.W.3d 631, 635 (Mo. App. E.D. 2007).

4

an appellant which the appellant has not explicitly made.[3]  Yet the majority now goes a step further:  not only does it reverse based on an argument never presented to the trial court, and never argued here; it reverses based on an argument *which the appellant has explicitly repudiated*.  I cannot join in such overreaching.

B.

Even if it were properly before us, the majority's "designation" argument is legally incorrect.  While we do not have the benefit of briefing or argument addressing the issue, I can perceive at least the following flaws in the majority's analysis.

1.      The F-250 policy itself denominates the F-250 as the "insured car."  As explained in greater detail in Judge Martin's separate dissent (in which I join), the policy's explicit definition of the "insured car" should be decisive.  The policy itself makes clear that the F-250 – and the F-250 alone – is the "designated" vehicle under this owner's policy, even though the policy provides some limited coverage for the insured's use of other vehicles.

2.      The majority opinion goes beyond the declarations page – which identifies only the F-250 – to the policy's insuring clause to identify the vehicle(s) purportedly "designated" under the policy.  Yet the majority offers no rationale for looking to the policy's insuring clause to *expand* the universe of "designated" vehicles, while not also looking to the policy's *exclusions*, which specify that coverage does *not* extend to other owned vehicles.  The majority's "pick and choose" approach – determining coverage by

---

[3] *See*, *e.g.*, *Glass v. First Nat'l Bank of St. Louis*, 191 S.W.3d 662, 667-68 n.16 (Mo. banc 2006) (noting that "the dissenting opinion . . . plays the role of advocate and puts forth an argument not offered by either party," based on "a distinction that the parties apparently felt had no merit"); *Willis v. Mo. Farm Bureau Servs., Inc.*, 396 S.W.3d 451, 454 (Mo. App. W.D. 2013).

5

looking to the insuring agreement, but not the exclusions – is inconsistent with the principle that "the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions." *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. banc 2007); *accord*, *Grable v. Atl. Cas. Ins. Co.*, 280 S.W.3d 104, 108-09 (Mo. App. E.D. 2009).

The majority's misguided analysis is illustrated by the fact that the section of its opinion titled "Coverage" blithely ignores the other owned vehicle exclusion – even though that exclusion is at the center of this appeal. Instead, the majority's "Coverage" analysis discusses only whether Hiles' operation of the Maxima fell within the F-250 policy's insuring clause, considered in isolation – an issue American Family does not even dispute. The Supreme Court's decision in *Todd* holds that an exclusion is a proper place for an insurer to place a coverage limitation like the one at issue here. The majority offers no justification for holding that American Family was required to exclude Hiles' use of other owned vehicles from coverage *in the insuring agreement itself*, rather than in an exclusion.[4]

The majority opinion (at 13-14) also suggests that the use of an exclusion to withdraw coverage for Hiles' use of an other owned vehicle, which would otherwise be covered by the broad language of the insuring agreement, creates an ambiguity which

---

[4] At various points, the majority states that its decision rests on the fact that coverage is afforded by "the liability coverage portion of the Ford policy." That statement is inaccurate – the other owned vehicle exclusion is part of the F-250's "liability coverage" section (Part 1 of the policy), to the same extent as the insuring agreement on which the majority so heavily relies. Stated more accurately, the majority opinion relies on one isolated provision in the policy's "liability coverage" section, to the exclusion of everything else appearing there.

6

must be interpreted against American Family. The Supreme Court rejected just such an analysis in *Todd*, where it explained:

> Insurance policies customarily include definitions that limit words used in granting coverage as well as exclusions that exclude from coverage otherwise covered risks. While a broad grant of coverage in one provision that is taken away by a more limited grant in another may be contradictory and inconsistent, the use of definitions and exclusions is not necessarily contradictory or inconsistent. . . . Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable.

223 S.W.3d at 162-63. *Accord*, *Progressive Nw. Ins. Co. v. Talbert*, 407 S.W.3d 1, 12-13 (Mo. App. S.D. 2013); *Grable*, 280 S.W.3d at 108 ("exclusions and definitions do not make an insurance policy ambiguous because they limit or exclude coverage given in the form policy"); *Hawkeye-Sec. Ins. Co. v. Bunch*, 643 F.3d 646, 652 (8th Cir. 2011) (Missouri law; observing that "[e]xclusions by their very nature set limitations on broader grants of coverage").

3.     Under the majority's reading of the policy, any number of *non-owned* vehicles (if driven by Hiles) are now considered to be "designated" vehicles under this *owner's policy*. Yet the Missouri Supreme Court has held that "the distinction between [owner's and operator's policies] should rest on the insured's ownership or lack of ownership of the vehicle involved in the accident. This is evidenced by the nomenclature and dichotomy employed." *Karscig v. McConville*, 303 S.W.3d 499, 503 (Mo. banc 2010) (citation and emphasis omitted). Neither the legislature, nor the Supreme Court, contemplated that non-owned vehicles would be considered to be "designated" vehicles under an *owner's* policy of insurance.

7

4. The majority opinion takes provisions of the F-250 policy which are intended to cover an insured's occasional, permissive use of a non-owned vehicle, and turns them into something entirely different: coverage for all of the insured's other owned vehicles.

Although the principal purpose of the F-250 policy is to insure the operation of the F-250 itself, I recognize that the policy provides additional coverage for an insured's incidental use of other vehicles. Such uses are easy to imagine: for example, the insured's use of a rental car, or of a vehicle belonging to a friend, when the insured is traveling, when the insured's vehicle is under repair, or when the insured requires greater passenger or cargo capacity for a special errand. As the Missouri Supreme Court explained more than forty years ago:

> "The purpose of the 'drive other cars' provision in an automobile liability policy is to cover occasional or incidental use of other cars without the payment of an additional premium, but to exclude the habitual use of other cars, which would increase the risk on the insurance company without a corresponding increase in the premium."

*State Farm Mut. Auto. Ins. Co. v. Western Cas. & Sur. Co.*, 477 S.W.2d 421, 424 (Mo. banc 1972) (citation omitted); *accord*, *Shelter Mut. Ins. Co. v. Sage*, 273 S.W.3d 33, 39 (Mo. App. W.D. 2008); *Earl v. State Farm Mut. Auto. Ins. Co.*, 820 S.W.2d 623, 624 (Mo. App. W.D. 1991).

The majority opinion transforms this easily-understood additional coverage into something it plainly was not intended to be: coverage for other vehicles the insured owns, or other vehicles which are provided for the insured's regular (or even exclusive) use. Under the majority opinion, any household owning multiple vehicles now needs to

8

purchase an owner's policy on only one:  if the policy provides *any* coverage for the insured's use of other vehicles, that coverage will be interpreted to apply to *all* vehicles the insured uses, including other owned vehicles, despite an exclusion intended to prevent this result.  We have previously rejected just such an interpretation, observing that "the rationale behind 'non-owned auto' clauses is to protect an insurer from a situation where an insured could purchase one policy for a described vehicle and be covered by the same policy without qualification while operating any and all other automobiles under his control or available for his use." *Allstate Ins. Co. v. Ibrahim*, 243 S.W.3d 452, 457 (Mo. App. E.D. 2007).  We have explained that the MVFRL,

> did not intend to enact a scheme by which only one policy of insurance need be purchased per household and several cars operated thereunder.  If we adopted Plaintiff's position, households with several drivers could purchase one policy of insurance to cover all vehicles owned by them, thereby obtaining multicar coverage with payment of a one-car premium.

*Schuster v. Shelter Mut. Ins. Co.*, 857 S.W.2d 381, 385 (Mo. App. W.D. 1993).

Notably, in *State Farm v. Western* the Supreme Court recognized that the inclusion of coverage for incidental use of other non-owned vehicles did *not* change the identity of the vehicle "designated" under a policy:  the Court observed that the policy at issue "was intended basically to provide coverage *on one designated vehicle*" named in the policy's declarations, even though – as here – "the policy does contain clauses which provide limited additional coverage" "with respect to operation of 'non-owned' automobiles."  477 S.W.2d at 423-24 (emphasis added).

Because the F-250 policy provides the required minimum coverage for the vehicle "designated" in the policy (*i.e.*, the F-250 itself), the additional coverage for an insured's

9

occasional use of other vehicles is not separately subject to the MVFRL's mandates. Providing such additional, non-statutory coverage is expressly sanctioned by the MVFRL. *See* § 303.190.7 ("Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this chapter.") As discussed in § II.B, below, numerous Missouri decisions have held that the MVFRL does not apply to additional coverage contained in an owner's policy for the insured's occasional use of non-owned automobiles. The majority opinion is necessarily inconsistent with these decisions.

5.      Finally, the majority's interpretation of the vehicles "designated" under this owner's policy is in tension with other provisions of the MVFRL. The MVFRL requires that an insurance identification card, showing that required insurance is in force, must "be carried in the insured motor vehicle at all times," and must be provided to law enforcement officers on request. § 303.024.5. The statute specifies that the insurance identification card must contain "[a] description of the insured motor vehicle, including year and make or at least five digits of the vehicle identification number or the word Fleet if the insurance policy covers five or more motor vehicles." § 303.024.2(5); *see also* 12 C.S.R. 10-25.060(2)(E), (F) (Department of Revenue's implementing regulation).

Plainly, the "insured motor vehicle" which must be described on an insurance identification card is the vehicle "designate[d] by explicit description or by appropriate reference" in an owner's policy pursuant to § 303.190.2(1). The MVFRL thus

10

contemplates that the "designated" vehicle(s) will be capable of being identified by make and model, or by vehicle identification number, at the time an insurer issues an insurance identification card. Yet under the majority's interpretation of the "designation" requirement, that would be impossible, since the F-250 policy would (on the majority's reading) constitute the statutorily-mandated insurance not only for the vehicle identified on the declarations page (the F-250), but also for any other vehicle Hiles happened to operate during the policy period.

II.

The argument Dutton actually makes is no more persuasive.

Dutton argues that the other owned vehicle exclusion in the F-250 policy is unenforceable under the Missouri Supreme Court's decision in *Karscig v. McConville*, 303 S.W.3d 499 (Mo. banc 2010). *Karscig* held that the same American Family exclusion at issue in this case could not be invoked to deny coverage where the insured was driving a non-owned vehicle made available for her regular use, because this would deny the insured the minimum coverage required by the MVFRL. *Id.* at 504.

*Karscig* does not assist Dutton, however, for two separate reasons:

1. *Karscig* dealt with an "operator's policy," subject to the requirements of § 303.190.3, while this case involves an "owner's policy" subject to the very different requirements of § 303.190.2; and

2. Even if the *Karscig* rule applied, it would not aid Dutton, because *Karscig* only requires that coverage be provided for an insured's use of *non-owned* vehicles; in this case, however, Hiles was driving *another vehicle she owned* at the time of the accident.

I address these issues in reverse order.

11

A.

The relevant holding from *Karscig* is:

> As an "operator's policy" [subject to the requirements of § 303.190.3], . . .
> [the insured driver's] policy must insure her against liability arising out of
> her use of any motor vehicle *not owned by her*. . . . The MVFRL controls
> and mandates that Jennifer's policy "shall insure" her against liability
> "arising out of the use" of *the non-owned accident vehicle*, the 1998
> Pontiac.

303 S.W.3d at 504 (second emphasis added).

As the italicized language reflects, *Karscig* held only that "operator's policies" must provide coverage for an insured's liability arising out of the use of any *non-owned* automobile. This was the only issue directly presented in *Karscig*: the driver in that case caused an accident while driving a vehicle owned by her parents. 303 S.W.3d at 501. Moreover, § 303.190.3, on which *Karscig* relied, only requires that an "operator's policy" insure "against loss from the liability imposed upon [the insured] by law for damages arising out of the use by him or her of *any motor vehicle not owned by him or her*." *Id.* at 504 (quoting § 303.190.3 (emphasis added by *Karscig*)).

Although Dutton suggests that *Karscig* "invalidated" the other owned vehicle exclusion, he reads *Karscig* too broadly – it simply held that the exclusion could not be employed, in an operator's policy, to deny coverage for liability arising from the insured's use of a *non-owned* vehicle.

In contrast with *Karscig*, in the present case Hiles was driving *a vehicle she owned* at the time of the accident which injured Dutton. Nothing in *Karscig*, or in § 303.190.3, requires that an insurer provide coverage for the insured's use of another *owned* vehicle.

12

And in *Lawson v. Traders Insurance*, 946 S.W.2d 298 (Mo. App. S.D. 1997), this Court expressly rejected the argument that the MVFRL requires an insurer to cover other vehicles owned by an insured:

> The [vehicle involved in the accident] was owned by Landing, but was not designated in the policy as a vehicle with respect to which coverage was granted. As pointed out by Traders, ***§ 303.190 does not require that a liability policy insure the named insured for an accident occurring while he is operating a vehicle which is owned by him, but is not one for which the policy grants coverage***.
>
> If the Motor Vehicle Financial Responsibility Law does not require liability insurance coverage for a particular situation, a policy provision excluding that coverage is not invalid. Under the facts of this case, the policy was not violative of public policy in the manner argued by Plaintiffs.

*Id.* at 301 (emphasis added; citation and internal quotation marks omitted).

We must enforce the terms of the contract between the parties unless those terms are contrary to public policy as expressed by the legislature. *Halpin v. Am. Family Mut. Ins. Co.*, 823 S.W.2d 479, 483 (Mo. banc 1992). Here, the F-250 policy unambiguously excludes coverage for Hiles' use of an other owned automobile; and the MVFRL does not require coverage for such a situation – even in an operator's policy. The exclusion in the policy must accordingly be applied. Because Hiles was involved in the accident while driving a vehicle which she owned, but which was not designated as the "insured car" in the F-250 policy, the policy's "other owned vehicles" exclusion defeats coverage for the accident. Even if *Karscig* applied to this case, we would be compelled to affirm.

13

B.

Dutton's reliance on *Karscig* fails for a second, separate reason: the *Karscig* rule only applies to *operator's policies*; this case, on the other hand, involves an *owner's policy*.

Section 303.190 contemplates only two categories of automobile liability insurance policies: an "owner's policy," and an "operator's policy." The statute specifies different mandatory requirements for each. Section 303.190 provides in relevant part:

> 1. A "motor vehicle liability policy" as said term is used in this chapter shall mean an owner's or an operator's policy of liability insurance, certified as provided in section 303.170 or section 303.180 as proof of financial responsibility, and issued, except as otherwise provided in section 303.180 by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.
>
> 2. Such owner's policy of liability insurance:
>
> (1) Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted;
>
> (2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the ***liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles*** within the United States of America or the Dominion of Canada, subject to limits, exclusive of interest and costs, with respect to each such motor vehicle, as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident; and

14

(3)     May exclude coverage against loss from liability imposed by law for damages arising out of the use of such motor vehicles by a member of the named insured's household who is a specifically excluded driver in the policy.

3.     Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the ***liability imposed upon him or her by law for damages arising out of the use by him or her of any motor vehicle not owned by him or her***, within the said territorial limits and subject to the same limits of liability as are set forth above with respect to any owner's policy of liability insurance.

(Emphasis added.)

As the quotation reflects, owner's policies and operator's policies are subject to radically different statutory requirements. An "owner's policy" must insure against liability arising from the use of the designated vehicle, by the insured or by any permissive user. An "operator's policy," on the other hand, insures the personal liability of the named insured when operating "any motor vehicle not owned by" the insured. § 303.190.3. An "owner's policy" covers *a particular vehicle*, while an "operator's policy" covers *a particular insured* for their use of any non-owned vehicle.[5]

As Dutton concedes, the F-250 policy is an "owner's policy" – it designated a specific vehicle for which coverage was provided, and the named insured identified in the policy (Hiles) was, in fact, the owner of the designated vehicle. *Karscig* explains that, because Hiles owned the vehicle insured under the F-250 policy, that policy can *only* be an "owner's policy":

According to the MVFRL, a motor vehicle liability policy shall be either "an owner's or an operator's policy of liability insurance." § 303.190.1.

---

[5] The majority opinion (at 16, 19) emphasizes that *Karscig* found coverage under an operator's policy, even though the policy did not identify the vehicle involved in the accident on its declarations page. That is not surprising, however: coverage under operator's policies is not limited to any particular vehicle or vehicles.

15

While the MVFRL does not define either "owner's policy" or "operator's policy," it does define "owner" and "operator." An owner is "a person who holds the legal title to a motor vehicle." § 303.020(9). An operator is "a person who is in actual physical control of a motor vehicle." § 303.020(8). These definitions are used throughout the MVFRL. § 303.020. Based on these definitions, a policy issued to an owner is an "owner's policy" and must comply with the statutory mandates of § 303.190.2, while a policy issued to a non-owner is an "operator's policy" and must comply with the statutory mandates of § 303.190.3.

This is consistent with the general understanding of liability insurance law. An "owner's policy" insures a person who owns a vehicle, while an "operator's policy" insures a person who operates a vehicle owned by another. Ownership or non-ownership is the crux of the distinction.

*Karscig*, 303 S.W.3d at 503 (citations and footnotes omitted).

*Karscig* involved an operator's policy issued to a driver who did not own a vehicle. *Karscig* held that the "other owned vehicles" exclusion *in an operator's policy* could not validly exclude coverage for the insured's use of a non-owned vehicle made available for her regular use. 303 S.W.3d at 504. The opinion makes clear that the Court's holding depended on the fact that the policy at issue was an operator's policy, rather than an owner's policy. The Court said as much: "In this case, the applicability of the exclusion depends on whether [the insured's] policy is an 'owner's policy' or an 'operator's policy.'" *Id.* at 503. Moreover, the Court stated that the other owned vehicle exclusion could not defeat coverage in that case only "because it conflicts with the MVFRL's requirements *for an 'operator's policy*.'" *Id.* (emphasis added). The only authority the Court cited to invalidate the exclusion was § 303.190.3, which requires that

16

an operator's policy cover the insured for any liability arising out of his or her use "of any motor vehicle not owned by him or her." *Id.* at 504 (quoting § 303.190.3).[6]

*Karscig* does not apply to *owner's* policies. Section 303.190.2, which specifies the mandatory contents of an "owner's policy," does not contain the statutory language on which *Karscig* relied; it does not require an "owner's policy" to insure against liability arising out of the use of "any motor vehicle not owned by [the named insured]." Instead, § 303.190.2 only requires an "owner's policy" to insure against liability arising out of the use of the motor vehicle "designate[d] by explicit description or by appropriate reference" in the policy itself.[7]

A number of cases have held that exclusions similar, or even identical, to the one in this case are enforceable *in an owner's policy*. For example, *Sisk v. American Family Mutual Insurance Co.*, 860 S.W.2d 34 (Mo. App. E.D. 1993), held that *the same exclusion at issue in this case* was enforceable in an owner's policy under the MVFRL. The Court emphasized that the policy before it was an owner's policy, not an operator's policy, and that the requirements of § 303.190.3 were therefore inapplicable. *Id.* at 36. Similarly, *Shelter Mutual Insurance Co. v. Harter*, 940 S.W.2d 555 (Mo. App. S.D.

---

[6] Ironically, even the majority recognizes that *Karscig* only ruled as it did because "the requirements *of an operator's policy* mandated minimal coverage of $25,000." Maj. Op. at 17 (emphasis added).

[7] The majority also relies on *American Standard Ins. Co. v. Hargrave*, 34 S.W.3d 88 (Mo. banc 2000), in which the Supreme Court held that two owner's policies were both required to pay the MVFRL minimum limits with respect to an accident. But *Hargrave* contains no discussion as to *why* both owner's policies were implicated, or why the MVFRL applied to both policies. Instead, in *Hargrave* it was "conceded at oral argument" that the negligent driver "was insured under two owner's policies at the time of her accident," *id.* at 90, and the insurer did not contest that each policy's coverage was subject to the MVFRL. The insurer's principal argument in *Hargrave* was that it had no obligation to pay "because the minimum statutory liability coverage required under the MVFRL need only be paid once, by one insurer, in any given accident," and another insurer had already paid the statutory minimum under a second owner's policy. 34 S.W.3d at 89. Because coverage under both owner's policies, and the MVFRL's applicability, were conceded, *Hargrave* is of limited relevance here. (Judge Martin's opinion contains a more extended discussion of the flaws in the majority's reliance on *Hargrave*.)

17

1997), held that an owner's policy could properly limit coverage for non-owned "motor vehicles" to four-wheeled vehicles, thus excluding the insured's motorcycle, which the MVFRL defines as a "motor vehicle." The Court explained:

> [A]n operator's policy "shall insure the person . . . against loss . . . arising out of the use . . . of any motor vehicle not owned by him." Section 303.190(3), RSMo 1994. . . .
>
> An owner's policy under the MVFRL, on the other hand, requires coverage for liability arising out of the use by the named insured of those motor vehicles which the policy designates "by explicit description or by appropriate reference." Section 303.190.2(2) RSMo 1994. Respondent's policy fits this description.
>
> Under the undisputed facts, Showalter could not reasonably expect the policy to be an operator's policy. This Court agrees with the trial court's assessment that "the insurance policy in question is an owner's policy and not an operator's policy" and concludes it was not error to grant summary judgment in favor of Respondent.

*Id.* at 556-57 (other citations and footnote omitted). Other cases reach the same result – an "owner's policy" may permissibly limit coverage for the insured's use of other vehicles, even though such limitations would not be enforceable in an "operator's policy."[8]

---

[8] *State Farm Mut. Auto. Ins. Co. v. Scheel*, 973 S.W.2d 560, 567 (Mo. App. W.D. 1998) ("where there is coverage which complies with either § 303.190.2, for an owner's policy, or § 303.190.3, for an operator's policy, any added or excess coverage not required under one or the other does not have to comply with the requirements of the MVFRL"; because policy complied with MVFRL's requirements for an owner's policy, "the fact that the policy's exclusion for the unauthorized use of a non-owned vehicle may violate the MVFRL as to an operator's policy only is inconsequential"); *Shelter Mut. Ins. Co. v. Ridenhour*, 936 S.W.2d 857, 859 (Mo. App. E.D. 1997) (appellant claimed that policy exclusion "violates the public policy of the MVFRL by excluding coverage for liability arising from the unauthorized use of a non-owned vehicle. We find no merit to this argument because the Shelter policy meets the minimum requirements of an owner's policy as set out in the MVFRL, is not an operator's policy and, therefore, satisfies the intent of the legislature."); *Am. Family Std. Ins. Co. of Wis. v. Hamil*, 862 S.W.2d 511, 512 (Mo. App. S.D. 1993) (because driver "had an owner's policy," § 303.190.3 inapplicable, and policy could lawfully exclude coverage for non-owned vehicle made available for insured's regular use); *Schuster v. Shelter Mut. Inc. Co.*, 857 S.W.2d 381, 385 (Mo. App. S.D. 1993) (same); *DeMeo v. State Farm Mut. Auto. Ins. Co.*, 686 F.3d 607, 611 (8th Cir. 2012) (Missouri law; citing to "a host of [Missouri] appellate decisions holding that an owner's policy that complies with § 303.190.2 may provide additional, operator's coverage(s) that are more limited than what an operator's policy must provide to comply with § 303.190.3"; holding that an owner's policy is not required, by

18

Because this case involves an "owner's policy," the rule announced in *Karscig* is inapplicable. Nothing in the MVFRL required this "owner's policy" to provide coverage for the use of any vehicle other than the vehicle expressly designated in the policy itself.[9]

**Conclusion**

By all rights, this should be a simple case: the policy under which Dutton now seeks coverage did not insure the vehicle involved in the accident. To avoid this straightforward outcome, the majority has conjured a brand-new coverage argument from whole cloth. Dutton has made crystal clear that he does _not_ advance the argument on which the majority relies; and that argument is meritless anyway. Dutton's own arguments fare no better, because they conflate the very different statutory requirements imposed on owner's and operator's policies of automobile liability insurance. Even if this owner's policy were subject to the requirements applicable to operator's policies, there is no requirement that an operator's policy provide coverage for vehicles owned by the insured driver. The trial court got it right, and its judgment should be affirmed.

_____
Alok Ahuja, Judge

statute, to include coverage for an insured's operation of a non-owned automobile, even though this coverage is statutorily mandated in an operator's policy).

[9] In his second Point, Dutton argues that the anti-stacking language in the American Family policies is ambiguous, and would not prevent him from simultaneously obtaining coverage under both the Maxima and the F-250 policies. If the F-250 policy does not provide coverage, however, it is unnecessary to address any "stacking" issue. *Bush v. Shelter Mut. Ins. Co.*, 412 S.W.3d 336, 341 (Mo. App. W.D. 2013) ("Before stacking can be an issue, there must first be applicable coverages to stack.").



In the

Missouri Court of Appeals

Western District

ADAM DUTTON,                         )
                                     )
            Appellant,               )    WD74940
                                     )
v.                                   )    OPINION FILED:  January 21, 2014
                                     )
AMERICAN FAMILY MUTUAL               )
INSURANCE COMPANY,                   )
                                     )
            Respondent.              )

## DISSENTING OPINION

I concur with the result reached by the dissenting opinion authored by Judge Ahuja.  I dissent separately because I perceive the debate between the majority and Judge Ahuja's dissent about whether the Maxima is a "designated vehicle" under the F-250 policy to be a red herring in light of the majority's interpretation of *American Standard Insurance Company v. Hargrave*, 34 S.W.3d 88 (Mo. banc 2001).  The majority reads *Hargrave* to require **every** owner's policy **whose insuring clause affords coverage for a loss** to pay MVFRL coverage, at a minimum.  [Majority Opinion, p. 12].  The majority then concludes that the Maxima is a "designated vehicle" under the F-250 policy because the insuring clause in that owner's policy **provides coverage** for Mrs. Hiles's operation of any car.   The majority opinion thus improvidently equates whether a *vehicle* is

"designated" in an owner's policy as required by section 303.190.2 with whether the policy's insuring clause contractually affords "coverage to an *insured*." Left uncorrected, the majority opinion will be cited to require stacking of MVFRL coverage from *multiple* owner's policies based solely on whether the policies provide **coverage of an insured**. This is not consistent with legislative intent, nor with a proper reading of *Hargrave*.

Section 303.190.2(1) provides that an owner's policy shall "designate by explicit description or by appropriate reference **all motor vehicles with respect to which coverage is herby granted**." (Emphasis added.) Section 303.190.2(2) then provides that the owner's policy must name the insured and any permissive driver of the designated vehicle or vehicles "against loss from liability imposed by law for damages arising out of the ownership, maintenance or use **of such motor vehicle or motor vehicles** . . . ." (Emphasis added.) Plainly, section 303.190.2 is written from the perspective of designation of a *vehicle*, not coverage of an *insured*, and requires MVFRL to be paid only if an owner's policy designates (or covers) *the vehicle* which caused a loss.

The majority's construction of *Hargrave* shifts the focus of section 303.190.2 from whether an owner's policy designates coverage for a specific vehicle to whether an owner's policy affords coverage of an insured. The majority finds that "the *Hargrave* court concluded that because there were two valid owner's policies at the time of the accident, both policies would be required to pay the minimum $25,000 as required by MVFRL." [Majority Opinion, p. 12] (emphasis added). The majority cites to the following passages from *Hargrave* to support this conclusion:

2

The plain language of section 303.190.2 indicates that *every owner's policy issued in this state must provide the minimum liability coverage to comply with Missouri law*.

[Majority Opinion, p. 11 (citing *Hargrave*, 34 S.W.3d at 91)] (emphasis added); and

What the MVFRL requires is that *each valid owner's or operator's policy provide the minimum liability limits specified*.

[Majority Opinion, p. 11 (citing *Hargrave*, 34 S.W.3d at 92)] (emphasis added). The majority extrapolates from these holdings that "the MVFRL minimum requirement per policy [is] not satisfied by the payment of one policy *when there were other policies that also provided coverage*." In other words, the majority claims that *Hargrave* requires every owner's policy to pay MVFRL coverage (at a minimum) if the policy otherwise covers the insured for the loss (but for operation of an exclusion).

This overly broad reading of *Hargrave* misses a step. It neglects to appreciate that *Hargrave* was not required to determine (and thus did not address) whether the two owner's policies at issue in that case each "designated" the accident vehicle. Thus, although *Hargrave* accurately observed that every owner's policy must *provide* MVFRL coverage, it did not address whether an owner's policy *designates a vehicle* as to subject the policy to the obligation to *pay* MVFRL coverage pursuant to section 303.190.2.

*Hargrave* did not need to address whether husband's vehicle's owner's policy designated the Ford Escort Mrs. Hargrave was driving because the issue was not in

dispute.  The definition of "insured car" in husband's owner's policy plainly included the

Ford Escort.[1]  The policy defined "insured car" as:

> (a) Any car described in the declarations and any private passenger car . . . you replace it with . . . .
>
> (b) Any additional private passenger car . . . . of which you acquire ownership during the policy period [subject to the obligation to report the desire that the additionally acquired car be insured within 30 days of acquisition].
>
> (c) Any utility trailer you own.
>
> (d) Any ***car . . . not owned by you being temporarily used as a substitute for any other vehicle described in this definition because of its withdrawal from normal use due to breakdown***, repair, servicing, loss, or destruction.

(Emphasis added.)  The Ford Escort was being used by Mrs. Hargrave because her

vehicle had broken down.  The Ford Escort caused the loss.  Thus, given the definition of

"insured car," husband's vehicle's owner's policy clearly "designated" the Ford Escort as a

vehicle "expressly described" or "appropriately referenced," and thus a vehicle as to

which the owner's policy intended to grant coverage.  Section 303.190.2(1), (2).  Because

no one contested this point, the Supreme Court had no reason to address the point, and

thus necessarily presumed in its analysis the unspoken--that husband's vehicle's owner's

policy "designated" the Ford Escort in the manner anticipated by section 303.190.2,

subjecting the policy to the MVFRL.

---

[1] The published opinion in *Hargrave* does not explain why all involved, including the insurer-appellant, accepted without discussion that the Ford Escort Mrs. Hargrave was driving was a "designated vehicle" under husband's vehicle's owner's policy pursuant to section 303.190.2.  The briefs and appendix from the case have been retrieved to assist in explaining the proper and limited context for the Supreme Court's holdings in *Hargrave*, an unusual exercise made necessary by the majority's sweeping attributions to *Hargrave.*

4

*Hargrave* must be read in this context. *Hargrave* only resolved a narrow policy question--did the legislature intend "the minimum statutory liability coverage required under the MVFRL . . . be paid [only] once . . . in any given accident." *Id*. at 89. It resolved this question, however, with an implicit and necessary understanding that both owner's policies "designated" the Ford Escort in the manner required by section 303.190.2. In resolving the narrow policy question, it is true that the Court observed that "[t]here is no language in section 303.190 that would restrict the minimum liability payments to a single insurance policy." *Id*. at 91. It is a mistake, however, to suggest that this observation had an intended reach any broader than the limited purpose for which it was announced. *Hargrave* merely rejected the argument that as a matter of public policy, only a single MVFRL payment is required where more than one owner's policy *designates the accident vehicle*. *Hargrave* did not *sub silentio* dispense with the need to determine in the first instance whether an owner's policy designates the accident vehicle in the manner required by section 303.190.2. Nor did *Hargrave sub silentio* conclude that every owner's policy which affords "coverage to an insured" designates the accident vehicle, requiring MVFRL coverage.[2]

Yet, that is precisely what the majority concludes. After ascribing to *Hargrave* the overly broad construction that MVFRL coverage must be paid on every owner's policy which affords coverage to an insured, the majority then bootstraps its finding that the

---

[2] Imprecise discussion in *Hargrave* of "coverage of the insured," and the overruling of *Shelter Mutual Insurance Company v. Haney*, 824, S.W.2d 949 (Mo. App. S.D. 1992) "[t]o the extent [it] conflicts with [*Hargrave*]," 34 S.W.3d at 91, all must be read in proper context for the reasons herein stated. The Supreme Court cannot be faulted for failing to anticipate that twelve years after *Hargrave* was issued, this court would apply its holdings out of context to emasculate the difference between whether a policy contractually affords an insured coverage with whether a vehicle is designated under a policy in the manner required by section 303.190.2.

Maxima is a "designated vehicle" under the F-250 policy by reliance on the insuring clause--a policy provision which describes the **coverage afforded the insured.**

The circular reasoning is apparent. By determining that a vehicle is "designated" under an owner's policy within the meaning of section 303.190.2 by reliance on a policy provision which describes when an *insured* is covered, the majority opinion conflates the narrow subset of owner's policies which *statutorily* "designate a vehicle" with the broader universe of owner's policies that afford *contractual* coverage of an insured.[3] In the process, the majority fails to appreciate that an owner's policy may afford an insured coverage by its terms even though it does not designate the vehicle the insured was driving as a vehicle "with respect to which coverage is . . . granted." Section 303.190.2(1). As a result, the majority opinion will be read to endorse routine stacking of MVFRL coverage from multiple owner's policies based solely on whether the policies afford coverage to an insured, but for operation of an exclusion.

Whether an owner's policy designates a vehicle as to subject the policy to the MVFRL should not be determined based solely on whether the policy's insuring clause covers the insured. Instead, further, precise inquiry is required to determine whether the policy was obtained to cover *the vehicle* which caused a loss--an inquiry which

---

[3] Significantly, several Missouri appellate decisions have recognized that although an owner's policy provision affording coverage for an insured's occasional use of "other" cars may well afford an contractual coverage to the insured (subject to applicable exclusions), the "drive other cars" provision alone does not subject the policy to the MVFRL. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Scheel*, 973 S.W.2d 560, 567 (Mo. App. W.D. 1998); *Shelter Mut. Ins. Co. v. Harter*, 940 S.W.2d 555, 556-57 (Mo. App. S.D. 1997); *Shelter Mut. Ins. Co. v. Ridenhour*, 936 S.W.2d 857, 859 (Mo. App. E.D. 1997); *Am. Family Std. Ins. Co. of Wis. v. Hamil*, 862 S.W.2d 511, 512 (Mo. App. S.D. 1993); *Sisk v. Am. Family Mut. Ins. Co.*, 860 S.W.2d 34, 36 (Mo. App. E.D. 1993); *Schuster v. Shelter Mut. Ins. Co.*, 857 S.W.2d 381, 385 (Mo. App. S.D. 1993); *see also DeMeo v. State Farm Mut. Auto. Ins. Co.*, 686 F.3d 607, 611 (8th Cir. 2012) (Missouri law). None of these cases is mentioned in *Hargrave,* further underscoring the error in the majority's overly broad construction of *Hargrave*--a construction which would necessarily require us to read *Hargrave* as overruling *sub silentio* each of the aforesaid Missouri appellate opinions.

6

necessitates that the vehicle be "expressly described" or "appropriately referenced" in the policy. Section 303.190.2(1). In determining whether an owner's policy was obtained to cover *the vehicle* which caused a loss, it is not proper to resort to policy provisions which broadly describe coverage for an insured. Rather, we must turn to policy provisions which are specifically intended to "explicitly describe" or "appropriately reference" the vehicle or vehicles for which coverage was intended. In an owner's policy, these provisions are the declarations page and the policy's definition of "insured car."

As discussed, *supra*, it was the definition of "insured car" in *Hargrave* which dispensed with the need to address, as a preliminary matter, whether the husband's vehicle's owner's policy designated the Ford Escort. Here, as the majority opinion points out, the Ford F-250 policy defines "insured car" in relevant part as "any **car** described in the declarations and any **private passenger car** or utility trailer you replace it with." [Majority Opinion, p. 4]. The Maxima was neither. Though the insuring clause in the F-250 policy afforded Mrs. Hiles, an insured, coverage for her operation of "any car," that is not determinative of whether the policy "designated" the Maxima in the manner anticipated by section 303.190.2.

I conclude, for the reasons herein stated, that the Ford F-250 owner's policy does not designate the Maxima in the manner anticipated by section 303.190.2, and is thus not subject to the MVFRL under the facts of this case.

_Cynthia L. Martin_____
Cynthia L. Martin, Judge

7